



1 DANIEL C. GIRARD (SBN: 114826)
DENA C. SHARP (SBN: 245869)
2 ADAM E. POLK (SBN: 273000)
SCOTT M. GRZENCZYK (SBN: 279309)
3 **GIRARD GIBBS LLP**
4 601 California Street, 14th Floor
San Francisco, CA 94108
5 Telephone: (415) 981-4800
Facsimile: (415) 981-4846
6 Email: dcg@girardgibbs.com

*Counsel for Plaintiffs Tiffany Bui*
8 *and Nicholas Letourneau*

9                      **UNITED STATES DISTRICT COURT**

10                 **NORTHERN DISTRICT OF CALIFORNIA**

11 TIFFANY BUI and NICHOLAS LETOURNEAU      Case No: **13  3516**
12 Individually and on Behalf of All Others Similarly
Situated,

13
                              Plaintiff,        **CLASS ACTION COMPLAINT**
14
                                                **DEMAND FOR JURY TRIAL**
15              v.

16 NYK LINE (NORTH AMERICA) INC., NIPPON
YUSEN KABUSHIKI KAISHA, WILH.
17 WILHELMSEN HOLDING ASA, WILH.
WILHELMSEN ASA, MITSUI O.S.K. LINES,
18 LTD., KAWASAKI KISEN KAISHA, LTD., "K"
LINE AMERICA, INC., EUKOR CAR
19 CARRIERS INC., WALLENIUS WILHELMSEN
20 LOGISTICS AS, WALLENIUS WILHELMSEN
LOGISTICS AMERICAS LLC, WALLENIUS
21 LINES AB, COMPAÑÍA SUD AMERICANA
DE VAPORES S.A., TOYOFUJI SHIPPING CO.,
22 LTD. and NISSAN MOTOR CAR CARRIER
CO., LTD.,
23
24                           Defendants.
25
26
27
28                        CLASS ACTION COMPLAINT

1    Plaintiffs Tiffany Bui and Nicholas Letourneau ("Plaintiffs"), on behalf of themselves and all
2  others similarly situated (the "Classes" as defined below), upon personal knowledge as to the facts
3  pertaining to themselves and upon information and belief as to all other matters, and based on the
4  investigation of counsel, bring this class action for damages, injunctive relief and other relief pursuant to
5  federal antitrust laws as well as state antitrust, unfair competition, and consumer protection laws, and the
6  common law of unjust enrichment, and allege as follows:

7  **I.    NATURE OF ACTION**

8    1.    This lawsuit is brought as a proposed class action against Defendants NYK Line (North
9  America) Inc. ("NYK America"), Nippon Yusen Kabushiki Kaisha ("NYK Line"), Mitsui O.S.K. Lines,
10 Ltd. ("MOL"), Kawasayyki Kisen Kaisha, Ltd. (""K" Line"), "K" Line America, Inc. (""K" Line
11 America"), EUKOR Vehicle Carriers Inc. ("EUKOR"), Wallenius Wilhelmsen Logistics AS ("WWL"),
12 Wilh. Wilhelmsen Holding ASA ("WW Holding"), Wilh. Wilhelmsen ASA ("WW ASA"), Wallenius
13 Wilhelmsen Logistics Americas LLC ("WWL America"), Wallenius Lines AB ("Wallenius"),
14 Compañía Sud Americana De Vapores S.A. ("CSAV"), Toyofuji Shipping Co., Ltd. ("Toyofuji") and
15 Nissan Motor Car Carrier Co., Ltd. ("Nissan") (all as defined below, and collectively the "Defendants"),
16 and unnamed co-conspirators, all of whom provide, market and/or sell Vehicle Carrier Services (defined
17 below) globally and in the United States, for engaging in at least a five-year-long conspiracy to fix,
18 raise, maintain and/or stabilize prices, and to allocate the market and customers in the United States for
19 Vehicle Carrier Services.

20   2.    "Vehicle Carriers" transport large numbers of cars, trucks, or other automotive vehicles
21 including agriculture and construction equipment (collectively "Vehicles") across large bodies of water
22 using specialized cargo ships known as Roll On/Roll Off vessels ("RoRos"). As used herein, "Vehicle
23 Carrier Services" refers to the paid ocean transportation of Vehicles by RoRo.

24   3.    Plaintiffs seek to represent all persons and entities in the United States who indirectly
25 purchased from any Defendant, any current or former subsidiary or affiliate of any Defendant, or any co-
26 conspirator, Vehicle Carrier Services for personal use and not for resale, that were incorporated into the

27                                              1

28                              CLASS ACTION COMPLAINT

1 price of a new Vehicle purchased or leased during the period from and including January 1, 2008
2 through such time as the anticompetitive effects of Defendants' conduct ceased (the "Class Period").

3      4.      Defendants provide, market, and/or sell Vehicle Carrier Services throughout the United
4 States.

5      5.      Defendants and their co-conspirators participated in a combination and conspiracy to
6 suppress and eliminate competition in the Vehicle Carrier Services market by agreeing to fix, raise,
7 maintain and/or stabilize the prices of, and to allocate the market and customers for, Vehicle Carrier
8 Services sold to Vehicle manufacturers and others in the United States. The combination and conspiracy
9 engaged in by Defendants and their co-conspirators was an unreasonable restraint of interstate and
10 foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1, state antitrust,
11 unfair competition, and consumer protection laws and the common law of unjust enrichment.

12      6.      Competition authorities in the United States, the European Union, Canada and Japan have
13 been investigating a possible global cartel among Vehicle Carriers since at least September 2012. Both
14 the United States Department of Justice's Antitrust Division ("DOJ") and Canada's Competition Bureau
15 ("CCB") are investigating unlawful, anticompetitive conduct in the market for ocean shipping of cars,
16 trucks, construction equipment and other products. The Japanese Fair Trade Commission ("JFTC") and
17 European Commission Competition Authority ("EC") have also conducted coordinated dawn raids at the
18 Tokyo and European offices of several Defendants.

19      7.      As a direct result of the anticompetitive and unlawful conduct alleged herein, Plaintiffs
20 and the Classes paid artificially inflated prices for Vehicle Carrier Services incorporated into the price of
21 a new Vehicle purchased or leased during the Class Period, and have thereby suffered antitrust injury to
22 their business or property.

23 **II.     JURISDICTION AND VENUE**

24      8.      Plaintiffs bring this action under Section 16 of the Clayton Act, 15 U.S.C. § 26, to secure
25 equitable and injunctive relief against Defendants for violating Section 1 of the Sherman Act, 15 U.S.C.
26 § 1. Plaintiffs also allege claims for actual and exemplary damages pursuant to state antitrust, unfair

27

28

1 competition, and consumer protection laws, and the common law of unjust enrichment, and seek to
2 obtain restitution, recover damages and secure other relief against Defendants for violations of those
3 state laws and common law. Plaintiffs and the Classes also seek attorneys' fees, costs and other expenses
4 under federal and state law.

5      9.     This Court has jurisdiction over the subject matter of this action pursuant to Section 16 of
6 the Clayton Act, 15 U.S.C. § 26, Section 1 of the Sherman Act, 15 U.S.C. § 1, and 28 U.S.C. §§ 1331
7 and 1337. This Court has subject matter jurisdiction of the state law claims pursuant to 28 U.S.C. §§
8 1332(d) and 1367, in that (i) this is a class action in which the matter or controversy exceeds the sum of
9 $5,000,000, exclusive of interests and costs, and in which some members of the proposed Classes are
10 citizens of a state different from some of Defendants; and (ii) Plaintiffs' state law claims form part of the
11 same case or controversy as their federal claims under Article III of the United States Constitution.

12      10.     Venue is proper in this district pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22,
13 and 28 U.S.C. §§ 1391 (b), (c), and (d), because a substantial part of the events giving rise to Plaintiffs'
14 claims occurred in this District, a substantial portion of the affected interstate trade and commerce
15 discussed below has been carried out in this District, and one or more of Defendants reside, are licensed
16 to do business in, are doing business in, had agents in, or are found or transact business in this District.

17      11.     This Court has in personam jurisdiction over Defendants because each, either directly or
18 through the ownership and/or control of its subsidiaries, inter alia: (a) transacted business in the United
19 States, including in this District; (b) directly or indirectly sold or marketed Vehicle Carrier Services
20 throughout the United States, including in this District; (c) had substantial aggregate contacts with the
21 United States as a whole, including in this District; or (d) were engaged in an illegal price-fixing
22 conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect
23 of causing injury to, the business or property of persons and entities residing in, located in, or doing
24 business throughout the United States, including in this District. Defendants also conduct business
25 throughout the United States, including in this District, and they have purposefully availed themselves of
26 the laws of the United States.

27

3

28 CLASS ACTION COMPLAINT

1    12.    Defendants engaged in conduct both inside and outside of the United States that caused
2    direct, substantial and reasonably foreseeable and intended anticompetitive effects upon interstate
3    commerce within the United States.

4    13.    The activities of Defendants and their co-conspirators were within the flow of, were
5    intended to, and did have a substantial effect on interstate commerce of the United States. Defendants'
6    Vehicle Carrier Services are sold in the flow of interstate commerce.

7    14.    Vehicles (the prices of which include Vehicle Carrier Services) transported by
8    Defendants from abroad to the United States and sold for use within the United States are goods brought
9    into the United States for sale, and, therefore, constitute import commerce. To the extent any such
10   Vehicles and the related Vehicle Carrier Services are purchased in the United States, and such Vehicles
11   or Vehicle Carrier Services do not constitute import commerce, Defendants' unlawful activities with
12   respect thereto, as more fully alleged herein during the Class Period, had, and continue to have, a direct,
13   substantial and reasonably foreseeable effect on United States commerce. The anticompetitive conduct,
14   and its effect on United States commerce described herein, proximately caused antitrust injury to
15   Plaintiffs and members of the Classes in the United States.

16   15.    By reason of the unlawful activities hereinafter alleged, Defendants substantially affected
17   commerce throughout the United States, causing injury to Plaintiffs and members of the Classes.
18   Defendants, directly and through their agents, engaged in activities affecting all states, to fix, raise,
19   maintain and/or stabilize prices and allocate the market and customers in the United States for Vehicle
20   Carrier Services, which conspiracy unreasonably restrained trade and adversely affected the market for
21   Vehicle Carrier Services.

22   16.    Defendants' conspiracy and unlawful conduct described herein adversely affected
23   persons and entities in the United States who purchased Vehicle Carrier Services for personal use and
24   not for resale, including Plaintiffs and members of the Classes.

25
26
27                                                    4
28                                   CLASS ACTION COMPLAINT

**III.     PARTIES**

**A.     Plaintiffs**

17.     Plaintiffs Tiffany Bui and Nicholas Letourneau are California residents who purchased Vehicle Carrier Services indirectly from one or more Defendants.

**B.     Defendants**

18.     Defendant NYK Line is a Japanese corporation with a principal place of business at 3-2, Marunouchi 2 Chome, Chidyoda-Ku, Tokyo. NYK Line – directly and/or through its subsidiaries, which it wholly owned and/or controlled – provided, marketed and/or sold Vehicle Carrier Services throughout the United States, including in this District, during the Class Period.

19.     Defendant NYK America is a New Jersey corporation with its principal place of business located at 300 Lighting Way, Secaucus, New Jersey 07094. NYK America is a wholly owned subsidiary of NYK Line. NYK America provided, marketed and/or sold Vehicle Carrier Services throughout the United States, including in this District, during the Class Period.

20.     Defendant MOL is a Japanese corporation with a principal place of business at 11 Toranomon 2-chome, Minato-ku, Tokyo. MOL – directly and/or through its subsidiaries, which it wholly owned and/or controlled – provided, marketed and/or sold Vehicle Carrier Services throughout the United States, including in this District, during the Class Period.

21.     Defendant "K" Line is a Japanese corporation with its principal place of business at 1-1, Uchisaiwaicho 2-Chome, Chiyoda-ku, Tokyo 100-8540. "K" Line – directly and/or through its subsidiaries, which it wholly owned and/or controlled – provided, marketed and/or sold Vehicle Carrier Services throughout the United States, including in this District, during the Class Period.

22.     Defendant "K" Line America is a Michigan corporation and a wholly owned subsidiary of "K" Line with its corporate headquarters (and national operations and service center) located in Richmond, Virginia. "K" Line America provided, marketed and/or sold Vehicle Carrier Services throughout the United States, including in this District, during the Class Period.

23.     Defendant WW Holding is a Norwegian corporation with a principal place of business at

5

1 Strandveien 20, NO-1366 Lysaker, Norway. It is the holding company for Defendant WW ASA and
2 other entities which comprise the Wilh. Wilhelmsen Group. WW Holding – directly and/or through its
3 subsidiaries, which it wholly owned and/or controlled – provided, marketed and/or sold Vehicle Carrier
4 Services throughout the United States, including in this District, during the Class Period.

5     24.    Defendant WW ASA is a Norwegian corporation with its principal place of business in
6 Lysaker, Norway. Defendant WW Holding owns 73% of WW ASA. WW ASA – directly and/or
7 through its subsidiaries, which it wholly owned and/or controlled – provided, marketed and/or sold
8 Vehicle Carrier Services throughout the United States, including in this District, during the Class Period.

9     25.    Defendant EUKOR is a South Korean company with its principal place of business at
10 13th floor Capital Tower, 736-1 Yeoksam-dong, Gangnam-gu, Seoul, 135-983, Korea. EUKOR –
11 directly and/or through its subsidiaries, which it wholly owned and/or controlled – provided, marketed
12 and/or sold Vehicle Carrier Services throughout the United States, including in this District, during the
13 Class Period.

14     26.    Defendant WWL is a Norwegian corporation that is a joint venture between Defendants
15 WW ASA and Defendant Wallenius. WWL – directly and/or through its subsidiaries, which it wholly
16 owned and/or controlled – provided, marketed and/or sold Vehicle Carrier Services throughout the
17 United States, including in this District, during the Class Period.

18     27.    Defendant WWL America is a Delaware limited liability company with its principal
19 place of business in Woodcliff Lake, NJ. It is a wholly-owned subsidiary of Defendant WWL. WWL
20 America provided, marketed and/or sold vehicle Carrier Services throughout the United States,
21 including in this District, during the Class Period.

22     28.    Defendant Wallenius is a Swedish corporation with its principal place of business at
23 Swedenborgsgatan 19, S-104 62 Stockholm, Sweden. Wallenius – directly and/or through its
24 subsidiaries, which it wholly owned and/or controlled – provided, marketed and/or sold vehicle Carrier
25 Services throughout the United States, including in this District, during the Class Period.

26

27

6

28 CLASS ACTION COMPLAINT

29. Defendant CSAV is a Chilean corporation with a principal place of business at Plaza Sotomayor 50, Valparaíso, Chile. CSAV – directly and/or through its subsidiaries, which it wholly owned and/or controlled – provided, marketed and/or sold Vehicle Carrier Services throughout the United States, including in this District, during the Class Period.

30. Defendant Toyofuji is a Japanese corporation with a principal place of business at 33-3 Shinpo-cho, Tokai City, Aichi 476-8522, Japan. Toyofuji – directly and/or through its subsidiaries, which it wholly owned and/or controlled – provided, marketed and/or sold Vehicle Carrier Services throughout the United States, including in this District, during the Class Period.

31. Defendant Nissan is a Japanese corporation with a principal place of business at Hibiya Daibiru Bldg., 1-2-2 Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan. Nissan – directly and/or through its subsidiaries, which it wholly owned and/or controlled – provided, marketed and/or sold Vehicle Carrier Services throughout the United States, including in this District, during the Class Period.

## IV.  AGENTS AND CO-CONSPIRATORS

32. Each Defendant acted as the principal of or agent for the other Defendants with respect to the acts, violations, and common course of conduct alleged herein.

33. Various persons, partnerships, sole proprietors, firms, corporations and individuals not named as Defendants in this lawsuit, and individuals, the identities of which are presently unknown, have participated as co-conspirators with Defendants in the offenses alleged in this Complaint, and have performed acts and made statements in furtherance of the conspiracy or in furtherance of the anticompetitive conduct.

34. Whenever in this Complaint reference is made to any act, deed or transaction of any corporation or limited liability entity, the allegation means that the corporation or limited liability entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's or limited liability entity's business or affairs.

7

1  **V.     FACTUAL ALLEGATIONS**

2     **A.     The Vehicle Carrier Industry**

3     35.    A RoRo ship is a special type of ocean vessel that allows wheeled Vehicles to be driven
4  and parked on its decks for long voyages. These ships, also known as Vehicle Carriers, have special
5  ramps to permit easy access, high sides to protect the cargo during transport, and numerous decks to
6  allow storage of a large number and variety of Vehicles.

7     36.    There are different types of RoRo ships. A Pure Vehicle Carrier (PCC) transports only
8  cars, and a Pure Car and Truck Carrier (PCTC) transports cars, trucks, and other four wheeled vehicles.
9  Although a RoRo ship cannot transport containers, some hybrid RoRo/container ships have been built.



WW ASA's MV Tønsberg RoRo vessel

20    37.    Vehicle Carriers are a defined submarket of the larger bulk shipping market. World trade
21 exploded after the proliferation of container ships. These ships allow a large range of goods, such as
22 food and consumer electronics, to be packed in standard-sized containers for quick loading and delivery.
23 However, cars, trucks, and heavy machinery, due to their larger and more irregular shapes, are not easily
24 shipped in containers. Furthermore, there are no reasonable substitutes for the shipment of Vehicles by
25 sea because any alternatives, such as air transportation, would be too costly.

8

28                         CLASS ACTION COMPLAINT

1       38.    For new Vehicles, the original equipment manufacturers ("OEMs") – mostly large
2 automotive, construction and agricultural manufacturers – purchase Vehicle Carrier Services directly
3 from Defendants. The OEMs and Vehicle Carriers generally enter into long-term shipping arrangements.

4       39.    Defendants and their co-conspirators provided Vehicle Carrier Services to OEMs for
5 transportation of Vehicles sold in the United States and elsewhere. Defendants and their coconspirators
6 provided Vehicle Carrier Services (a) in the United States for the transportation of Vehicles
7 manufactured elsewhere and exported for sale in the United States, and (b) in other countries for the
8 transportation of Vehicles manufactured elsewhere and exported for sale in the United States.

9       40.    Plaintiffs and members of the proposed Classes purchased Vehicle Carrier Services
10 indirectly from one or more of the Defendants by virtue of their purchase or lease of a new Vehicle
11 during the Class Period.

12       41.    The annual market for Vehicle Carrier Services in the United States is nearly one billion
13 dollars. Specifically, for the transportation of new, imported motor vehicles manufactured elsewhere
14 and exported for sale in the United States is between \$600 and \$800 million per year.

15     **B.**    **The Market Structure and Characteristics Support the Existence of a Conspiracy**

16       42.    The structure and other characteristics of the market for Vehicle Carrier Services are
17 conducive to a price-fixing agreement and have made collusion particularly attractive. Specifically, the
18 Vehicle Carrier Services market: (1) has high barriers to entry; (2) has inelasticity of demand; (3) is
19 highly concentrated; (4) is highly homogenized; (5) is rife with opportunities to meet and conspire; and
20 (6) has excess capacity.

21       *1.*    *The Market for Vehicle Carrier Services Has High Barriers to Entry*

22       43.    A collusive arrangement that raises product prices above competitive levels would, under
23 basic economic principles, attract new entrants seeking to benefit from the supra-competitive pricing.
24 When, however, there are significant barriers to entry, new entrants are much less likely to enter the
25 market. Thus, barriers to entry help facilitate the formation and maintenance of a cartel.

26
27                         9

28                   CLASS ACTION COMPLAINT

1    44.    There are substantial barriers that preclude, reduce, or make more difficult entry into the
2  Vehicle Carrier Services market. Transporting Vehicles without damage across oceans requires highly
3  specialized and sophisticated equipment, resources and industry knowledge. The ships that make such
4  transport possible are highly specialized. Such ships are purposely built to an unusual design that
5  includes high sides, multiple interior decks, and no container cargo space. These characteristics restrict
6  the use of the ships to the Vehicle Carrier Services market. A new entrant into the business would face
7  costly and lengthy start-up costs, including multi-million dollar costs associated with manufacturing or
8  acquiring a fleet of Vehicle Carriers and other equipment, energy, transportation, distribution
9  infrastructure and skilled labor. It is estimated that the capital cost of a RoRo is at least $95 million.[1]

10    45.    Additionally, the nature of the Vehicle Carrier Services industry requires the
11  establishment of a network of routes to serve a particular set of customers with whom Defendants
12  establish long-term relationships. The existence of these established routes and long-term contracts
13  increases switching costs for shippers and presents an additional barrier to entry.

14    46.    The Vehicle Carrier Services market also involves economies of scale and scope which
15  present additional barriers to entry.

16    (a) Economies of scale exist where firms can lower the average cost per unit through
17  increased production, since fixed costs are shared over a larger number of units. Fuel accounts for nearly
18  50% of all operational costs for Vehicle Carriers. However Vehicle Carriers are less sensitive to fuel
19  prices than other modes of transportation, providing opportunities to exploit economies of scale. As fuel
20  prices increased in the last 5-10 years, market participants were incentivized to increase the average size
21  of vessels. This reflects the presence of economies of scale, because fuel costs did not increase
22  proportionally as vessel size grew.

23    (b) Economies of scope exist where firms achieve a cost advantage from providing a
24  wide variety of products or services. The major Vehicle Carriers, including Defendants, own related

25

26  [1] Asaf Ashar, *Marine Highways' New Direction*, J. OF COM. 38 (Nov. 21, 2011).

27

10

28                              CLASS ACTION COMPLAINT

1  shipping or transportation businesses they can utilize to provide additional services to clients, such as
2  the operation of dedicated shipping terminals and inland transportation of Vehicles.

3          2.      *There is Inelasticity of Demand for Vehicle Carrier Services*

4          47.     "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in
5  one or the other. For example, demand is said to be "inelastic" if an increase in the price of a product
6  results in only a small decline in the quantity sold of that product, if any. In other words, customers have
7  nowhere to turn for alternative, cheaper products of similar quality, and so continue to purchase despite
8  a price increase.

9          48.     For a cartel to profit from raising prices above competitive levels, demand must be
10 relatively inelastic at competitive prices. Otherwise, increased prices would result in declining sales,
11 revenues, and profits as customers purchased substitute products or declined to buy altogether. Inelastic
12 demand is a market characteristic that facilitates collusion, allowing producers to raise their prices
13 without triggering customer substitution and lost sales revenue.

14         49.     Demand for Vehicle Carrier Services is highly inelastic. This is because there are no
15 close substitutes for this service. A Vehicle Carrier is the only ocean vessel that has the carrying
16 capacity for a large number of Vehicles. A Vehicle Carrier is also more versatile than other substitutes
17 because it is built to adjust to various shapes and sizes. Because a container ship functions based on the
18 uniformity of the cargo—everything must fit within the standardized containers—it is not conducive to
19 transporting larger and more irregularly-shaped goods, such as cars, trucks, and agricultural and
20 construction equipment. Foreign OEMs must employ Vehicle Carrier Services to facilitate the sale of
21 their Vehicles in North America, regardless of whether prices are kept at supra-competitive levels. There
22 is simply no alternative for high volume transoceanic transportation of Vehicles to the United States.

23         3.      *The Market for Vehicle Carriers Is Highly Concentrated*

24         50.     A concentrated market is more susceptible to collusion and other anticompetitive
25 practices.

26

27                                            11

28                              CLASS ACTION COMPLAINT

1    51.    Defendants dominate the global Vehicle Carrier Services market. Defendants controlled
2    over 70 percent of the Vehicle Carrier Services market during the Class Period.[2]



4.    *The Services Provided by Vehicle Carriers Are Highly Homogeneous*

15    52.    Vehicle Carrier Services are a commodity-like service that is interchangeable among
16    Vehicle Carriers.

17    53.    When purchases view products or services offered by different suppliers as
18    interchangeable, it is easier for suppliers to unlawfully agree on the price for the product or service in
19    question, and it is easier to effectively police the collusively set prices. This makes it easier to form and
20    sustain an unlawful cartel.

21    54.    Vehicle Carrier Services are qualitatively the same across different carriers. Each
22    Defendant has the capability to provide the same or similar Vehicle Carrier Services and Vehicle Carrier
23    Service customers make purchase decisions based primarily on price. The core considerations for a
24    purchaser will be where, when and how much. This commoditization and interchangeability of Vehicle

25

26    [2] Source: Hesnes Shipping AS, The Car Carrier Market 2010.

27                                              12

28                                    CLASS ACTION COMPLAINT

1  Carrier Services facilitated Defendants' conspiracy by making coordination on price much simpler than
2  if Defendants had numerous distinct products or services with varying features.

3          *5.     Defendants Had Ample Opportunities to Meet and Conspire*

4          55.    Defendants attended industry events where they had the opportunity to meet, have
5  improper discussions under the guise of legitimate business contacts, and perform acts necessary for the
6  operation and furtherance of the conspiracy. For example, there are frequent trade shows for shipping
7  companies around the globe; such as the Breakbulk conferences[3] and the biennial RoRo trade show in
8  Europe.

9          56.    Defendants "K" Line and NYK Line are also members of the Transpacific Stabilization
10  Agreement (TSA), which consists of "major ocean container shipping lines that carry cargo from Asia to
11  ports and inland points in the U.S." According to the TSA website, it provides a forum for its members
12  to, inter alia:

13          •    Meet, exchange market information, and jointly conduct market research; and

14          •    Develop voluntary, non-binding guidelines for rates and charges.[4]

15  TSA meetings, which are ostensibly held to set rates for container shipping, provide an opportunity for
16  its members, including Defendants "K" Line and NYK Line, to discuss Vehicle shipping markets,
17  routes, and rates and engage in illegal price fixing, customer allocation, and bid rigging conspiracies. In
18  fact, the CCB, DOJ, JFTC, EC, and various other antitrust organizations have already fined Defendants
19
20

21  [3] Breakbulk Magazine provides its readers with project cargo, heavy lift and RoRo logistics intelligence
22  including news, trending, data and metrics. Breakbulk Magazine's global events include Breakbulk
    Transportation Conferences & Exhibitions, which "are the largest international events focused on
23  traditional breakbulk logistics, heavy-lift transportation and project cargo trade issues." The conferences
    provide opportunities to "meet with specialized cargo carriers, ports, terminals, freight forwarders,
24  heavy equipment transportation companies and packers." Source: http://www.breakbulk.com/breakbulk-
25  global-events/.

26  [4] *See* About TSA at http://www.tsacarriers.org/about.html.

27                                          13

28                              CLASS ACTION COMPLAINT

1 "K" Line, NYK Line, and MOL for their roles in a conspiracy to fix airfreight forwarding fees across
2 several continents.

3     57.    Additionally, Defendants routinely enter into joint "vessel sharing" or "space charter"
4 agreements. These agreements allow shipping lines to reserve space or "slots" on one another's ships.
5 Vessel sharing agreements are very common in the international maritime shipping industry, comprising
6 approximately 79% of all agreements registered with the Federal Maritime Commission ("FMC").
7 While allegedly entered into for space charter purposes, these agreements provide an opportunity for
8 Defendants to discuss Vehicle shipping markets, routes and rates, and to engage in illegal price fixing
9 and bid rigging conspiracies.

10     58.    The very nature of the negotiations between Vehicle Carriers and OEMs also facilitates
11 collusion among Vehicle Carriers. Soren Tousgaard Jensen, Managing Directorof WWL Russia, has
12 explained, using Japan as an example,

13    [T]he manufacturers [in Japan], in order to get the right frequency, the
right market coverage and the right ports, have often called in two, three,
14    sometimes four shipping lines around the table and said that they would
spread their volumes between them, depending on how competitive they
15    were. The shipping lines have to work together to find ways of not having
ships in the same position and ways of having one line deliver at the
16    beginning of the month and another mid-month.[5]

17         *6.    The Market for Vehicle Carrier Services Has Excess Capacity*

18     59.    Excess capacity occurs when a market is capable of supplying more of a product or
19 service than is needed. This often means that demand is less than the output the market has the
20 capability to produce. Academic literature suggests, and courts have found, that the presence of excess
21 capacity can facilitate collusion.[6]

22

23 [5] *Profitability is the key issue for RoRo carriers*, AUTO. SUPPLY CHAIN (Oct. 4, 2012), *available at*
http://www.automotivesupplychain.org/features/133/77/Profitability-the-key-issuefor-RoRo-carriers/.
24 [6] *See* Benoit, J. and V. Krishna, *Dynamic Duopoly: Prices and Quantities*, REV. OF ECON. STUDIES, 54,
23-36 (1987); Carl Davidson & Raymond Deneckere, *Excess Capacity and Collusion*, INT'L ECON.
25 REV., 31(3), 521-41 (1990); *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 657 (7th Cir.
26 2002).

27     14

1      60.     Significantly, the market for Vehicle Carrier Services has operated in a state of excess
2 capacity since 2008. The tables below demonstrate that while the capacity of Vehicle Carriers to
3 transport Vehicles has increased since 2007, the utilization rate of Vehicle Carriers has fallen and
4 remained stable at a rate of approximately 83% since 2010:



**Capacity of Vehicle Carriers (in cars)**

Source: The Car Carrier Market, 2004-2012; Hesnes Shipping AS

15

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15   61.   In the face of excess capacity, Defendants agreed to reduce capacity and increase prices
16 through coordinated "slow steaming." Slow steaming involves lowering a carrier's speed to conserve on
17 fuel costs. NYK Line, for example, has used slow steaming for container ships and Vehicle Carriers
18 since 2010. By elongating the time it takes to make ocean crossings, Vehicle Carriers can reduce
19 capacity thereby creating artificial capacity shortages.

20   62.   In 2011, the FMC opened an investigation into slow steaming after reportedly receiving
21 complaints from shippers.[7] Roy Pearson, deputy director of the FMC's Bureau of Trade Analysis, told
22 the FMC that academic studies of slow steaming showed carriers could save $3 billion per year in fuel
23
24

25   [7] Specifically, the FMC is investigating the "economic effects" of slow steaming to determine whether it
26 is causing "unreasonable constraints" on the international supply chain.

27                                                                    16
28                                        CLASS ACTION COMPLAINT

1  costs.[8] As part of its investigation, the FMC issued a Notice of Inquiry soliciting public comment on the
2  impact of slow steaming on United States ocean liner commerce. In response, the National Industrial
3  Transportation League, an association representing shippers, commented that despite the cost savings
4  generated by slow steaming, many League members had actually "experienced increased shipping costs
5  . . ."[9]

6      63.     Defendants' practices of slow steaming and vessel sharing represent concerted, collusive
7  efforts to reduce output in order to increase prices despite overcapacity in the Vehicle Carrier Services
8  market. By acting in concert pursuant to their conspiracy, Defendants decreased the availability of
9  Vehicle Carrier Services in the market, which caused prices to rise artificially during the Class Period.

10      **C.     There Is Strong Evidence of Collusion in the Vehicle Carrier Services Market**

11          *1.     Defendants Raised Prices at a Rate that Far Exceeded Demand*

12      64.     Prices for Vehicle Carrier Services have been generally increasing since 2006.



23  [8] R.G. Edmonson, *FMC to Review Slow Steaming*, J. OF COM. (Jan. 7, 2011), *available at*
24  http://www.joc.com/maritime-news/fmc-review-slow-steaming_20110107.html.

25  [9] Comments of The National Industrial Transportation League to the FMC's Notice of Inquiry
Solicitation of Views on the Impact of Slow Steaming (Apr. 5, 2011), *available at*
26  http://www.fmc.gov/noi-slow_steaming/.

27                                                  17

28                              CLASS ACTION COMPLAINT

1    65.    As the graph above demonstrates, pricing for Vehicle Carrier Services (per vehicle)
2  remained relatively flat from 2001 to 2006. In 2001, the per-vehicle price was approximately \$301.30,
3  while in 2006 the per vehicle price was \$305.79, an increase of less than 2%.

4    66.    Beginning just prior to the Class Period, the price of Vehicle Carrier Services has
5  increased by 23%.

6    67.    The increase in the price of Vehicle Carrier Services far outpaced any increase in demand
7  during the Class Period.

8    68.    In the absence of an unlawful price-fixing conspiracy, according to the laws of supply
9  and demand, prices would not increase at a rate greater than the rate of demand, yet that is exactly what
10  happened in the Vehicle Carrier Services market during the Class Period.

11         *2.    Defendants Previously Colluded in Different Markets*

12    69.    The affiliates and subsidiaries of certain Defendants have recently pled guilty and agreed
13  to pay millions of dollars in fines for violating the antitrust laws in other markets.

14    70.    In 2007, the DOJ and EC launched an investigation into price fixing among international
15  air freight forwarders, including certain affiliates and subsidiaries of Defendants. On October 10 of that
16  year, the EC launched unannounced inspections at the premises of various international air freight
17  forwarding companies with the help and coordination of various other nations' antitrust enforcement
18  groups.

19    71.    On March 19, 2009, the JFTC ordered 12 companies to pay \$94.7 million in fines for
20  violations of the Japanese Antimonopoly Act ("AMA"). Included among the 12 companies were "K"
21  Line Logistics, Ltd., a subsidiary of Defendant "K" Line, Yusen Air & Sea Services Co., Ltd., a
22  subsidiary of Defendant NYK Line, and MOL Logistics (Japan) Co., Ltd., a subsidiary of Defendant
23  MOL.

24    72.    The JFTC concluded that the companies had, over a five-year period, met and agreed to,
25  among other things, the amount of fuel surcharges, security charges, and explosive inspection charges

26
27                                          18

28                              CLASS ACTION COMPLAINT

1  that they would charge their international air freight forwarding customers. The agreements were,
2  according to the JFTC, negotiated at meetings of the Japan Aircargo Forwarders Association.

3      73.     Yusen Logistics Co., Ltd. filed a complaint in April 2009 requesting a hearing to review
4  the JFTC's orders, and the Tokyo High Court upheld the orders on November 9, 2012.

5      74.     On September 30, 2011, MOL Logistics (Japan) Co., Ltd. pleaded guilty to a Criminal
6  Information in the United States District Court for the District of Columbia charging it with Sherman
7  Act violations related to price fixing. MOL is one of 16 companies that agreed to plead guilty or have
8  pled guilty as a result of the DOJ's freight forwarding investigation, which has resulted in more than
9  $120 million in criminal fines to date. According to the Criminal Information filed against MOL
10 Logistics (Japan) Co. Ltd., it and its co-conspirators accomplished their conspiracy by:

11          (a) Participating in meetings, conversations, and communications to discuss certain
12              components of freight forwarding service fees to be charged on air cargo shipments from
13              Japan to the United States;

14          (b) Agreeing, during those meetings, conversations, and communications, on one or more
15              components of the freight forwarding service fees to be charged on air cargo shipments
16              from Japan to the United States;

17          (c) Levying freight forwarding service fees, and accepting payments for services provided
18              for, air cargo shipments from Japan to the United States, in accordance with the
19              agreements reached; and

20          (d) Engaging in meetings, conversations, and communications for the purpose of monitoring
21              and enforcing adherence to the agreed-upon freight forwarding service fees.

22      75.     On March 28, 2012, the EC fined 14 international groups of companies, including Yusen
23 Shenda Air & Sea Service (Shanghai) Ltd., a subsidiary of Defendant NYK Line, a total of $219 million
24 for their participation in the air cargo cartels and violating European Union antitrust rules. According to
25 the EC, "[i]n four distinct cartels, the cartelists established and coordinated four different surcharges and

27                                          19

28

1 charging mechanisms, which are component elements of the final price billed to customers for these
2 services."

3     76.    On March 8, 2013, the DOJ announced that "K" Line Logistics, Ltd. and Yusen Logistics
4 Co., Ltd., a subsidiary of Defendant NYK Line, agreed to pay criminal fines of $3,507,246 and
5 $15,428,207, respectively, for their roles in a conspiracy to fix certain freight-forwarding fees for cargo
6 shipped by air from the United States to Japan. As with MOL Logistics (Japan) Co. Ltd., "K" Line
7 Logistics, Ltd. and Yusen Logistics Co., Ltd. pleaded guilty to meeting with co-conspirators, agreeing to
8 what freight forwarding service fees should be charged on air cargo shipments, and actually levying
9 those fees on its customers from about September 2002 until at least November 2007.

10         *3.    Competition Authorities Have Launched and Coordinated a Global Investigation*
          *into Price-Fixing in the Market for Vehicle Carrier Services*
11

12     77.    United States, Canadian, Japanese, and European competition authorities have initiated a
13 global, coordinated antitrust investigation concerning the unlawful conspiracy alleged herein. The
14 investigation originated in the United States after an American shipping company complained of
15 Defendants' conspiracy to the DOJ.

16     78.    On September 6, 2012, the JFTC executed raids at the Japanese offices of NYK Line,
17 MOL, "K" Line, WWL, and EUKOR as part of an investigation into anticompetitive conduct related to
18 Vehicle Carrier Services. Defendant "K" Line confirmed in a statement to its shareholders, as part of its
19 FY2012 2nd Quarter report, that it was visited by a JFTC investigation team on suspicion of violating
20 Japan's Antimonopoly Act in terms of transporting cars and wheeled construction machinery.
21 Defendants NYK Line and MOL further confirmed that their Japanese offices had been searched.

22     79.    The Japan Daily Press reported that a JFTC official said the cartel "was formed to deal
23 with the rising fuel charges, personnel costs and shipbuilding expenses." According to the article,
24 "apparently some companies formed smaller groups for specific shipping routes, such as for Europe,
25 North America and other Asian nations" and the three major Japanese firms – NYK Line, "K" Line and

26

27                                 20

28                     CLASS ACTION COMPLAINT

1 MOL – played "a big role in this setup." "The unscrupulous companies were controlling the competition
2 and manipulating transport orders from carmakers."

3     80.    Defendant WW ASA confirmed in a press release on September 7, 2012 that it had
4 received a request for information from the CCB, and that (i) its subsidiaries, WWL and EUKOR, had
5 been visited by the JFTC as part of an investigation related to the Japan Antimonopoly Act; (ii) WWL
6 had received requests for information from the EC, DOJ and CCB; and (iii) EUKOR had received
7 requests for information from the DOJ and the CCB. According to Defendant WW ASA, the purpose of
8 the requests made to WWL and EUKOR "is to ascertain whether there is evidence of any infringement
9 of competition law related to possible price cooperation between carriers and allocation of customers."

10     81.    On the same day, in coordination with United States and Japanese authorities, the EC
11 carried out additional unannounced inspections at the European offices of several maritime shipping
12 companies suspected of operating a cartel. According to the EC, it carried out the inspections in
13 coordination with United States and Japanese competition authorities, and "ha[d] reasons to believe that
14 the companies concerned may have violated Article 101 of the [Treaty on the functioning of the
15 European Union] TFEU prohibiting cartels and restrictive business practices."

16     82.    The Japanese Business Daily reported that the shipping affiliates of Toyota Motor Corp.
17 and Nissan Motor Co. were also among the companies raided by the JFTC. Toyota Motor Corp.'s
18 shipping affiliate is Defendant ToyoFuji, and Nissan Motor Co.'s is Defendant Nissan.

19     83.    Defendant CSAV issued a statement in mid-September revealing that its employees had
20 received subpoenas from the DOJ and CCB in connection with the suspected Vehicle Carrier Services
21 cartel. Defendant CSAV stated, "[t]he investigation seeks to inquire into the existence of antitrust law
22 violations related to cooperation agreements on prices and allocation of clients between car carriers."

23     84.    The DOJ, through spokesperson Gina Talamona, confirmed to the media shortly after the
24 September 2012 raids, "We are coordinating with the European Commission, the Japanese Fair Trade
25 Commission and other international competition authorities." Ms. Talamona explained that "[t]he

26

27

                                  21

28                                 CLASS ACTION COMPLAINT

1 | antitrust division is investigating the possibility of anticompetitive practices involving the ocean

2 | shipping of cars, trucks, construction equipment, and other products."

3 | **VI.**     **CLASS ACTION ALLEGATIONS**

4 |      85.     Plaintiffs bring this action on behalf of themselves and as a class action under Rule 23(a)

5 | and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief on behalf of

6 | the following class (the "Nationwide Class"):

7 |
8 |
9 |
> All persons and entities in the United States who indirectly purchased from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, Vehicle Carrier Services for personal use and not for resale, incorporated into the price of a new Vehicle purchased or leased during the Class Period.

10 |      86.     Plaintiffs also bring this action on behalf of themselves and as a class action under Rule

11 | 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to the common law

12 | of unjust enrichment and the state antitrust, unfair competition, and consumer protection laws of the

13 | states listed below (the "Plaintiff States") on behalf of the following class (the "Damages Class"):

14 |
15 |
16 |
> All persons and entities in the Plaintiff States who indirectly purchased, from any Defendant or any current or former subsidiary or affiliate thereof, or any coconspirator, Vehicle Carrier Services for personal use and not for resale, incorporated into the price of a new Vehicle purchased or leased during the Class Period.

17 |      87.     The Nationwide Class and the Damages Class are referred to herein as the "Classes."

18 | Excluded from the Classes are Defendants, their parent companies, subsidiaries and affiliates, any co-

19 | conspirators, federal governmental entities and instrumentalities of the federal government, states and

20 | their subdivisions, agencies and instrumentalities, and persons who purchased Vehicle Carrier Services

21 | directly.

22 |      88.     While Plaintiffs do not know the exact number of the members of the Classes, Plaintiffs

23 | believe there are (at least) thousands of members in each Class.

24 |      89.     Common questions of law and fact exist as to all members of the Classes. This is

25 | particularly true given the nature of Defendants' conspiracy, which was generally applicable to all the

26 |

27 |

28 |

members of both Classes, thereby making appropriate relief with respect to the Classes as a whole. Such questions of law and fact common to the Classes include, but are not limited to:

 (a) Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices of Vehicle Carrier Services sold in the United States;

 (b) The identity of the participants of the alleged conspiracy;

 (c) The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

 (d) Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Claim for Relief;

 (e) Whether the alleged conspiracy violated state antitrust and unfair competition law, and/or state consumer protection law, as alleged in the Second and Third Claims for Relief;

 (f) Whether Defendants unjustly enriched themselves to the detriment of Plaintiffs and members of the Classes, thereby entitling Plaintiffs and members of the Classes to disgorgement of all benefits derived by Defendants, as alleged in the Fourth Claim for Relief;

 (g) Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and members of the Classes;

 (h) The effect of the alleged conspiracy on the prices of Vehicle Carrier Services sold in the United States during the Class Period;

 (i) Whether Plaintiffs and members of the Classes had any reason to know or suspect the conspiracy, or any means to discover the conspiracy;

 (j) Whether Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from the Plaintiffs and members of the Classes;

 (k) The appropriate injunctive and related equitable relief for the Nationwide Class; and

23

CLASS ACTION COMPLAINT

1         (l) The appropriate level of class-wide damages for the Damages Class.

2        90.    Plaintiffs' claims are typical of the claims of the members of the Classes, and Plaintiffs
3 will fairly and adequately protect the interests of the Classes. Plaintiffs and all members of the Classes
4 are similarly affected by Defendants' wrongful conduct in that they paid artificially inflated prices for
5 Vehicle Carrier Services purchased indirectly from Defendants and/or their co-conspirators.

6        91.    Plaintiffs' claims arise out of the same common course of conduct giving rise to the
7 claims of the other members of the Classes. Plaintiffs' interests are coincident with, and not antagonistic
8 to, those of the other members of the Classes. Plaintiffs are represented by counsel that is competent and
9 experienced in the prosecution of antitrust and class action litigation.

10       92.    The questions of law and fact common to the members of the Classes predominate over
11 any questions affecting only individual members, including legal and factual issues relating to liability
12 and damages.

13       93.    Class action treatment is a superior method for the fair and efficient adjudication of the
14 controversy, in that, among other things, such treatment will permit a large number of similarly situated
15 persons to prosecute their common claims in a single forum simultaneously, efficiently and without the
16 unnecessary duplication of evidence, effort and expense that numerous individual actions would
17 engender. The benefits of proceeding through the class mechanism, including providing injured persons
18 or entities with a method for obtaining redress for claims that it might not be practicable to pursue
19 individually, substantially outweigh any difficulties that may arise in management of this class action.

20       94.    The prosecution of separate actions by individual members of the Classes would create a
21 risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for
22 Defendants.

23 **VII.**   **PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY**

24       95.    Defendants' price-fixing conspiracy had the following effects, among others:

25          (a) Price competition has been restrained or eliminated with respect to Vehicle Carrier
26              Services;

27

24

28

1  (b) The prices of Vehicle Carrier Services have been fixed, raised, maintained, or stabilized
2      at artificially inflated levels;

3  (c) Indirect purchasers of Vehicle Carrier Services have been deprived of free and open
4      competition; and

5  (d) Indirect purchasers of Vehicle Carrier Services paid artificially inflated prices.

6      96.     During the Class Period, Plaintiffs and members of the Classes paid supra-competitive
7  prices for Vehicle Carrier Services. OEMs and automobile dealers passed on the inflated charges to
8  purchasers and lessees of new Vehicles. Those overcharges have unjustly enriched Defendants.

9      97.     The market for Vehicle Carrier Services and the market for Vehicles are inextricably
10 linked and intertwined because the market for Vehicle Carrier Services exists to serve the Vehicle
11 market. Without the Vehicles, the Vehicle Carrier Services have little to no value because they have no
12 independent utility. Indeed, the demand for Vehicles creates the demand for Vehicle Carrier Services.

13     98.     While even a monopolist would increase its prices when the cost of its inputs increased,
14 the economic necessity of passing through cost changes increases with the degree of competition a firm
15 faces. The OEM and dealer markets for new Vehicles are subject to vigorous price competition. The
16 OEMs and dealers have thin net margins, and are therefore at the mercy of their input costs, such that
17 increases in the price of Vehicle Carrier Services lead to corresponding increases in prices for new
18 Vehicles at the OEM and dealer levels. When downstream distribution markets are highly competitive,
19 as they are in the case of new Vehicles shipped by Vehicle Carrier, overcharges are passed through to
20 ultimate consumers, such as the indirect-purchaser Plaintiffs and members of the Classes.

21     99.     Hence, the inflated prices of Vehicle Carrier Services in new Vehicles resulting from
22 Defendants' price-fixing conspiracy have been passed on to Plaintiffs and the other members of the
23 Classes by OEMs and dealers.

24     100.    The purpose of the conspiratorial conduct of Defendants and their co-conspirators was to
25 raise, fix, rig or stabilize the price of Vehicle Carrier Services and, as a direct and foreseeable result, the
26 price of new Vehicles shipped by Vehicle Carriers.

27

28

101. Economists have developed techniques to isolate and understand the relationship between one "explanatory" variable and a "dependent" variable in those cases when changes in the dependent variable are explained by changes in a multitude of variables, even when all such variables may be changing simultaneously. That analysis – called regression analysis – is commonly used in the real world and in litigation to determine the impact of a price increase on one cost in a product (or service) that is an assemblage of costs.

102. Regression analysis is one potential method by which to isolate and identify only the impact of an increase in the price of Vehicle Carrier Services on prices for new purchased or leased Vehicles even though such products contain a number of other inputs whose prices may be changing over time. A regression model can explain how variation in the price of Vehicle Carrier Services affects changes in the price of new purchased or leased Vehicles. In such models, the price of Vehicle Carrier Services would be treated as an independent or explanatory variable. The model can isolate how changes in the price of Vehicle Carrier Services impact the price of new Vehicles shipped by Vehicle Carrier while controlling for the impact of other price-determining factors.

103. The precise amount of the overcharge impacting the prices of new Vehicles shipped by Vehicle Carrier can be measured and quantified. Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive charge passed-through the chain of distribution. Thus, the economic harm to Plaintiffs and members of the Classes can be quantified.

104. By reason of the alleged violations of the antitrust laws and other laws alleged herein, Plaintiffs and members of the Classes have sustained injury to their businesses or property, having paid higher prices for Vehicle Carrier Services than they would have paid in the absence of Defendants' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

1 **VIII. PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS**

2 **A. The Statute of Limitations Did Not Begin to Run Because Plaintiffs Did Not and Could Not Discover Their Claims**
3

4 105. Plaintiffs repeat and re-allege the allegations set forth above.

5 106. Plaintiffs and members of the Classes had no knowledge of the combination or
6 conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth
7 herein, until shortly before the filing of this Complaint. Plaintiffs and members of the Classes did not
8 discover, and could not have discovered through the exercise of reasonable diligence, the existence of
9 the conspiracy alleged herein until September 6, 2012, the date the JFTC announced raids of certain
10 Defendants' offices for their role in the criminal price-fixing conspiracy alleged herein.

11 107. Plaintiffs and members of the Classes are consumers who had no direct contact or
12 interaction with Defendants, and had no means from which they could have discovered the combination
13 and conspiracy described in this Complaint before the September 6, 2012 raids alleged above.

14 108. No information in the public domain was available to Plaintiffs and members of the
15 Classes prior to the announced raids on September 6, 2012 that revealed sufficient information to
16 suggest that Defendants were involved in a criminal conspiracy to fix the prices charged for Vehicle
17 Carrier Services. Plaintiffs and members of the Classes had no means of obtaining any facts or
18 information concerning any aspect of Defendants' dealings with OEMs or other direct purchasers, much
19 less the fact that they had engaged in the combination and conspiracy alleged herein.

20 109. For these reasons, the statute of limitations as to Plaintiffs and the Classes' claims did not
21 begin to run, and has been tolled, with respect to the claims that Plaintiffs and members of the Classes
22 have alleged in this Complaint.

23 **B. Fraudulent Concealment Tolled the Statute of Limitations**

24 110. In the alternative, application of the doctrine of fraudulent concealment tolled the statute
25 of limitations as to the claims asserted herein by Plaintiffs and the Classes. Plaintiffs and members of the
26 Classes did not know and could not have known of the existence of the conspiracy and unlawful

27 27

28 CLASS ACTION COMPLAINT

1  combination alleged herein until, at the earlier, September 6, 2012, i.e., the date the JFTC announced
2  raids of certain Defendants' offices for their role in the criminal price-fixing conspiracy alleged herein.

3      111.    Before that time, Plaintiffs and members of the Classes were unaware of Defendants'
4  unlawful conduct, and did not know before then that they were paying supracompetitive prices for
5  Vehicle Carrier Services throughout the United States during the Class Period. No information, actual or
6  constructive, was ever made available to Plaintiffs and members of the Classes that even hinted to
7  Plaintiffs and members of the Classes that they were being injured by Defendants' unlawful conduct.

8      112.    The affirmative acts of Defendants alleged herein, including acts in furtherance of the
9  conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

10     113.    By its very nature, Defendants' anticompetitive conspiracy and unlawful combinations
11  were inherently self-concealing. Defendants met and communicated in secret and agreed to keep the
12  facts about their collusive conduct from being discovered by any member of the public or by the OEMs
13  and other direct purchasers with whom they did business.

14     114.    Plaintiffs and members of the Classes could not have discovered the alleged combination
15  or conspiracy at an earlier date by the exercise of reasonable diligence because of the deceptive practices
16  and techniques of secrecy employed by Defendants and their coconspirators to avoid detection of, and to
17  fraudulently conceal, their conduct.

18     115.    Because the alleged conspiracy was both self-concealing and affirmatively concealed by
19  Defendants and their co-conspirators, Plaintiffs and members of the Classes had no knowledge of the
20  alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to
21  investigate whether a conspiracy existed, until September 6, 2012, when the JFTC announced raids of
22  certain Defendants' offices for their role in the criminal price-fixing conspiracy alleged herein.

23     116.    For these reasons, the statute of limitations applicable to Plaintiffs' and the Classes'
24  claims was tolled and did not begin to run until September 6, 2012.

25
26
27
                                                    28
28                                    CLASS ACTION COMPLAINT

**FIRST CLAIM FOR RELIEF**
**Violation of Section 1 of the Sherman Act**
**(on behalf of Plaintiffs and the Nationwide Class)**

117. Plaintiffs repeat and re-allege the allegations set forth above as if fully set forth herein.

118. Defendants and unnamed conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

119. The acts done by each of Defendants as part of, and in furtherance of, their contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

120. During the Class Period, Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices for Vehicle Carrier Services, thereby creating anticompetitive effects. The anticompetitive acts were intentionally directed at the United States market for Vehicle Carrier Services and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for Vehicle Carrier Services throughout the United States.

121. The conspiratorial acts and combinations have caused unreasonable restraints in the market for Vehicle Carrier Services. As a result of Defendants' unlawful conduct, Plaintiffs and other similarly situated indirect purchasers in the Nationwide Class who purchased Vehicle Carrier Services have been harmed by being forced to pay inflated, supra-competitive prices for Vehicle Carrier Services.

122. In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

123. Defendants' conspiracy had the following effects, among others:

(a) Price competition in the market for Vehicle Carrier Services has been restrained, suppressed, and/or eliminated in the United States;

29

(b) Prices for Vehicle Carrier Services provided by Defendants and their coconspirators have been fixed, raised, maintained, and stabilized at artificially high, noncompetitive levels throughout the United States; and

(c) Plaintiffs and members of the Nationwide Class who purchased Vehicle Carrier Services indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

124. Plaintiffs and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for Vehicle Carrier Services purchased indirectly from Defendants and the co-conspirators than they would have paid and will pay in the absence of the conspiracy.

125. The alleged contract, combination, or conspiracy is a per se violation of the federal antitrust laws. Plaintiffs and members of the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## SECOND CLAIM FOR RELIEF
### Violation of State Antitrust Statutes
### (on behalf of Plaintiffs and the Damages Class)

126. Plaintiffs repeat and re-allege the allegations set forth above as if fully set forth herein.

127. During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the provision of Vehicle Carrier Services in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

128. The contract, combination, or conspiracy consisted of an agreement among Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Vehicle Carrier Services and to allocate customers for Vehicle Carrier Services in the United States.

129. In formulating and effectuating this conspiracy, Defendants and their coconspirators performed acts in furtherance of the combination and conspiracy, including:

30

1    (a) participating in meetings and conversations among themselves in the United States and

2      elsewhere during which they agreed to price Vehicle Carrier Services at certain levels,

3      and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by

4      Plaintiffs and members of the Damages Class with respect to Vehicle Carrier Services

5      provided in the United States;

6    (b) allocating customers and markets for Vehicle Carrier Services provided in the United

7      States in furtherance of their agreements; and

8    (c) participating in meetings and conversations among themselves in the United States and

9      elsewhere to implement, adhere to, and police the unlawful agreements they reached.

10  130.  Defendants and their co-conspirators engaged in the actions described above for the

11 purpose of carrying out their unlawful agreements to fix, increase, maintain, or stabilize prices and to

12 allocate customers with respect to Vehicle Carrier Services.

13  131.  Defendants' anticompetitive acts described above were knowing, willful and constitute

14 violations or flagrant violations of the following state antitrust statutes.

15  132.  Defendants have entered into an unlawful agreement in restraint of trade in violation of

16 the Arizona Revised Statutes, §§ 44-1401, *et seq.*

17    (a) Defendants' combinations or conspiracies had the following effects: (1) Vehicle Carrier

18      Services price competition was restrained, suppressed, and eliminated throughout

19      Arizona; (2) Vehicle Carrier Services prices were raised, fixed, maintained and stabilized

20      at artificially high levels throughout Arizona; (3) Plaintiffs and members of the Damages

21      Class were deprived of free and open competition; and (4) Plaintiffs and members of the

22      Damages Class paid supra-competitive, artificially inflated prices for Vehicle Carrier

23      Services.

24    (b) During the Class Period, Defendants' illegal conduct substantially affected Arizona

25      commerce.

26

27

31

28              CLASS ACTION COMPLAINT

1    (c) As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members
2        of the Damages Class have been injured in their business and property and are threatened
3        with further injury.

4    (d) By reason of the foregoing, Defendants entered into agreements in restraint of trade in
5        violation of Ariz. Rev. Stat. §§ 44-1401, *et seq*. Accordingly, Plaintiffs and members of
6        the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et*
7        *seq*.

8        133.   Defendants have entered into an unlawful agreement in restraint of trade in violation of
9    the California Business and Professions Code, §§ 16700, *et seq*.

10   (a) During the Class Period, Defendants and their co-conspirators entered into and engaged
11       in a continuing unlawful trust in restraint of the trade and commerce described above in
12       violation of Section 16720, California Business and Professions Code. Defendants, and
13       each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and
14       maintain prices of, and allocate markets for, Vehicle Carrier Services at supra-
15       competitive levels.

16   (b) The aforesaid violations of Section 16720, California Business and Professions Code,
17       consisted, without limitation, of a continuing unlawful trust and concert of action among
18       Defendants and their co-conspirators, the substantial terms of which were to fix, raise,
19       maintain, and stabilize the prices of, and to allocate markets for, Vehicle Carrier Services.

20   (c) For the purpose of forming and effectuating the unlawful trust, Defendants and their co-
21       conspirators have done those things which they combined and conspired to do, including
22       but not limited to the acts, practices and course of conduct set forth above and the
23       following: (1) Fixing, raising, stabilizing, and pegging the price of Vehicle Carrier
24       Services; and (2) Allocating among themselves the provision of Vehicle Carrier Services.

25   (d) The combination and conspiracy alleged herein has had, inter alia, the following effects:
26       (1) Price competition in the provision of Vehicle Carrier Services has been restrained,

27                                                  32

28

1    suppressed, and/or eliminated in the State of California; (2) Prices for Vehicle Carrier

2    Services provided by Defendants and their co-conspirators have been fixed, raised,

3    stabilized, and pegged at artificially high, non-competitive levels in the State of

4    California and throughout the United States; and (3) Those who purchased Vehicle

5    Carrier Services directly or indirectly from Defendants and their co-conspirators have

6    been deprived of the benefit of free and open competition.

7    (e) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

8    members of the Damages Class have been injured in their business and property in that

9    they paid more for Vehicle Carrier Services than they otherwise would have paid in the

10    absence of Defendants' unlawful conduct. As a result of Defendants' violation of Section

11    16720 of the California Business and Professions Code, Plaintiffs and members of the

12    Damages Class seek treble damages and their cost of suit, including a reasonable

13    attorney's fee, pursuant to Section 16750(a) of the California Business and Professions

14    Code.

15    134.    Defendants have entered into an unlawful agreement in restraint of trade in violation of

16    the District of Columbia Code Annotated §§ 28-4501, *et seq*.

17    (a) Defendants' combinations or conspiracies had the following effects: (1) Vehicle Carrier

18    Services price competition was restrained, suppressed, and eliminated throughout the

19    District of Columbia; (2) Vehicle Carrier Services prices were raised, fixed, maintained

20    and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs

21    and members of the Damages Class were deprived of free and open competition; and (4)

22    Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated

23    prices for Vehicle Carrier Services.

24    (b) During the Class Period, Defendants' illegal conduct substantially affected District of

25    Columbia commerce.

26

27    33

28    CLASS ACTION COMPLAINT

1  (c) As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members

2  of the Damages Class have been injured in their business and property and are threatened

3  with further injury.

4  (d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade

5  in violation of District of Columbia Code Ann. §§ 28-4501, *et seq*. Accordingly,

6  Plaintiffs and members of the Damages Class seek all forms of relief available under

7  District of Columbia Code Ann. §§ 28-4501, *et seq*.

8  135.  Defendants have entered into an unlawful agreement in restraint of trade in violation of

9  the Iowa Code §§ 553.1, *et seq*.

10  (a) Defendants' combinations or conspiracies had the following effects: (1) Vehicle Carrier

11  Services price competition was restrained, suppressed, and eliminated throughout Iowa;

12  (2) Vehicle Carrier Services prices were raised, fixed, maintained and stabilized at

13  artificially high levels throughout Iowa; (3) Plaintiffs and members of the Damages Class

14  were deprived of free and open competition; and (4) Plaintiffs and members of the

15  Damages Class paid supra-competitive, artificially inflated prices for Vehicle Carrier

16  Services.

17  (b) During the Class Period, Defendants' illegal conduct substantially affected Iowa

18  commerce.

19  (c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

20  members of the Damages Class have been injured in their business and property and are

21  threatened with further injury.

22  (d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade

23  in violation of Iowa Code §§ 553.1, *et seq*. Accordingly, Plaintiffs and members of the

24  Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq*..

25  136.  Defendants have entered into an unlawful agreement in restraint of trade in violation of

26  the Kansas Statutes Annotated, §§ 50-101, *et seq*.

27

34

28  CLASS ACTION COMPLAINT

| | |
|---|---|
| 1 | (a) Defendants' combinations or conspiracies had the following effects: (1) Vehicle Carrier |
| 2 | Services price competition was restrained, suppressed, and eliminated throughout |
| 3 | Kansas; (2) Vehicle Carrier Services prices were raised, fixed, maintained and stabilized |
| 4 | at artificially high levels throughout Kansas; (3) Plaintiffs and members of the Damages |
| 5 | Class were deprived of free and open competition; and (4) Plaintiffs and members of the |
| 6 | Damages Class paid supra-competitive, artificially inflated prices for Vehicle Carrier |
| 7 | Services. |
| 8 | (b) During the Class Period, Defendants' illegal conduct substantially affected Kansas |
| 9 | commerce. |
| 10 | (c) As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members |
| 11 | of the Damages Class have been injured in their business and property and are threatened |
| 12 | with further injury. |
| 13 | (d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade |
| 14 | in violation of Kansas Stat. Ann. §§ 50-101, *et seq*. Accordingly, Plaintiffs and members |
| 15 | of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50- |
| 16 | 101, *et seq*. |

137. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1) Vehicle Carrier
Services price competition was restrained, suppressed, and eliminated throughout Maine;
(2) Vehicle Carrier Services prices were raised, fixed, maintained and stabilized at
artificially high levels throughout Maine; (3) Plaintiffs and members of the Damages
Class were deprived of free and open competition; and (4) Plaintiffs and members of the
Damages Class paid supra-competitive, artificially inflated prices for Vehicle Carrier
Services.

35

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(b) During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10, §§ 1101, *et seq*.

138. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1) Vehicle Carrier Services price competition was restrained, suppressed, and eliminated throughout Michigan; (2) Vehicle Carrier Services prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Vehicle Carrier Services.

(b) During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq*. Accordingly, Plaintiffs

36

CLASS ACTION COMPLAINT

1    and members of the Damages Class seek all relief available under Michigan Comp. Laws

2    Ann. §§ 445.771, *et seq.*

3    139.   Defendants have entered into an unlawful agreement in restraint of trade in violation of

4    the Minnesota Annotated Statutes §§ 325D.49, *et seq.*

5    (a) Defendants' combinations or conspiracies had the following effects: (1) Vehicle Carrier

6    Services price competition was restrained, suppressed, and eliminated throughout

7    Minnesota; (2) Vehicle Carrier Services prices were raised, fixed, maintained and

8    stabilized at artificially high levels throughout Minnesota; (3) Plaintiffs and members of

9    the Damages Class were deprived of free and open competition; and (4) Plaintiffs and

10   members of the Damages Class paid supra-competitive, artificially inflated prices for

11   Vehicle Carrier Services.

12   (b) During the Class Period, Defendants' illegal conduct substantially affected Minnesota

13   commerce.

14   (c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

15   members of the Damages Class have been injured in their business and property and are

16   threatened with further injury.

17   (d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade

18   in violation of Minnesota Stat. §§ 325D.49, *et seq.* Accordingly, Plaintiffs and members

19   of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq.*

20   140.   Defendants have entered into an unlawful agreement in restraint of trade in violation of

21   the Mississippi Code Annotated §§ 75-21-1, *et seq.*

22   (a) Defendants' combinations or conspiracies had the following effects: (1) Vehicle Carrier

23   Services price competition was restrained, suppressed, and eliminated throughout

24   Mississippi; (2) Vehicle Carrier Services prices were raised, fixed, maintained and

25   stabilized at artificially high levels throughout Mississippi; (3) Plaintiffs and members of

26   the Damages Class were deprived of free and open competition; and (4) Plaintiffs and

27                                        37

28                           CLASS ACTION COMPLAINT

1     members of the Damages Class paid supra-competitive, artificially inflated prices for

2     Vehicle Carrier Services.

3     (b) During the Class Period, Defendants' illegal conduct substantially affected Mississippi

4     commerce.

5     (c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

6     members of the Damages Class have been injured in their business and property and are

7     threatened with further injury.

8     (d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade

9     in violation of Mississippi Code Ann. § 75-21-1, *et seq*. Accordingly, Plaintiffs and

10    members of the Damages Class seek all relief available under Mississippi Code Ann. §

11    75-21-1, *et seq*.

12    141.   Defendants have entered into an unlawful agreement in restraint of trade in violation of

13    the Nebraska Revised Statutes §§ 59-801, *et seq*.

14    (a) Defendants' combinations or conspiracies had the following effects: (1) Vehicle Carrier

15    Services price competition was restrained, suppressed, and eliminated throughout

16    Nebraska; (2) Vehicle Carrier Services prices were raised, fixed, maintained and

17    stabilized at artificially high levels throughout Nebraska; (3) Plaintiffs and members of

18    the Damages Class were deprived of free and open competition; and (4) Plaintiffs and

19    members of the Damages Class paid supra-competitive, artificially inflated prices for

20    Vehicle Carrier Services.

21    (b) During the Class Period, Defendants' illegal conduct substantially affected Nebraska

22    commerce.

23    (c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

24    members of the Damages Class have been injured in their business and property and are

25    threatened with further injury.

26

27                                          38

28                          CLASS ACTION COMPLAINT

1  (d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade

2    in violation of Nebraska Revised Statutes §§ 59-801, *et seq*. Accordingly, Plaintiffs and

3    members of the Damages Class seek all relief available under Nebraska Revised Statutes

4    §§ 59-801, *et seq*.

5 142. Defendants have entered into an unlawful agreement in restraint of trade in violation of

6 the Nevada Revised Statutes Annotated §§ 598A.010, *et seq*.

7  (a) Defendants' combinations or conspiracies had the following effects: (1) Vehicle Carrier

8    Services price competition was restrained, suppressed, and eliminated throughout

9    Nevada; (2) Vehicle Carrier Services prices were raised, fixed, maintained and stabilized

10    at artificially high levels throughout Nevada; (3) Plaintiffs and members of the Damages

11    Class were deprived of free and open competition; and (4) Plaintiffs and members of the

12    Damages Class paid supra-competitive, artificially inflated prices for Vehicle Carrier

13    Services.

14  (b) During the Class Period, Defendants' illegal conduct substantially affected Nevada

15    commerce.

16  (c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

17    members of the Damages Class have been injured in their business and property and are

18    threatened with further injury.

19  (d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade

20    in violation of Nevada Rev. Stat. Ann. §§ 598A, *et seq*. Accordingly, Plaintiffs and

21    members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§

22    598A, *et seq*.

23 143. Defendants have entered into an unlawful agreement in restraint of trade in violation of

24 the New Hampshire Revised Statutes §§ 356:1, *et seq*.

25  (a) Defendants' combinations or conspiracies had the following effects: (1) Vehicle Carrier

26    Services price competition was restrained, suppressed, and eliminated throughout New

27

39

28 <center>CLASS ACTION COMPLAINT</center>

1  Hampshire; (2) Vehicle Carrier Services prices were raised, fixed, maintained and

2  stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and

3  members of the Damages Class were deprived of free and open competition; and (4)

4  Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated

5  prices for Vehicle Carrier Services.

6  (b) During the Class Period, Defendants' illegal conduct substantially affected New

7  Hampshire commerce.

8  (c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

9  members of the Damages Class have been injured in their business and property and are

10  threatened with further injury.

11  (d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade

12  in violation of New Hampshire Revised Statutes §§ 356:1, *et seq*. Accordingly, Plaintiffs

13  and members of the Damages Class seek all relief available under New Hampshire

14  Revised Statutes §§ 356:1, *et seq*.

15  144.  Defendants have entered into an unlawful agreement in restraint of trade in violation of

16  the New Mexico Statutes Annotated §§ 57-1-1, *et seq*.

17  (a) Defendants' combinations or conspiracies had the following effects: (1) Vehicle Carrier

18  Services price competition was restrained, suppressed, and eliminated throughout New

19  Mexico; (2) Vehicle Carrier Services prices were raised, fixed, maintained and stabilized

20  at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the

21  Damages Class were deprived of free and open competition; and (4) Plaintiffs and

22  members of the Damages Class paid supra-competitive, artificially inflated prices for

23  Vehicle Carrier Services.

24  (b) During the Class Period, Defendants' illegal conduct substantially affected New Mexico

25  commerce.

26

27  40

28  CLASS ACTION COMPLAINT

1          (c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

2               members of the Damages Class have been injured in their business and property and are

3               threatened with further injury.

4          (d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade

5               in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq*. Accordingly, Plaintiffs and

6               members of the Damages Class seek all relief available under New Mexico Stat. Ann. §§

7               57-1-1, *et seq*.

8     145.    Defendants have entered into an unlawful agreement in restraint of trade in violation of

9     the New York General Business Laws §§ 340, *et seq*.

10         (a) Defendants' combinations or conspiracies had the following effects: (1) Vehicle Carrier

11              Services price competition was restrained, suppressed, and eliminated throughout New

12              York; (2) Vehicle Carrier Services prices were raised, fixed, maintained and stabilized at

13              artificially high levels throughout New York; (3) Plaintiffs and members of the Damages

14              Class were deprived of free and open competition; and (4) Plaintiffs and members of the

15              Damages Class paid supra-competitive, artificially inflated prices for Vehicle Carrier

16              Services when they purchased Vehicles transported by Vehicle Carrier Services, or

17              purchased products that were otherwise of lower quality, than would have been absent

18              Defendants' illegal acts, or were unable to purchase products that they would have

19              otherwise have purchased absent the illegal conduct.

20         (b) During the Class Period, Defendants' illegal conduct substantially affected New York

21              commerce.

22         (c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

23              members of the Damages Class have been injured in their business and property and are

24              threatened with further injury.

25         (d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade

26              in violation of the New York Donnelly Act, §§ 340, *et seq*. The conduct set forth above is

27                                                 41

28                                   CLASS ACTION COMPLAINT

1    a per se violation of the Act. Accordingly, Plaintiffs and members of the Damages Class

2    seek all relief available under New York Gen. Bus. Law §§ 340, *et seq.*

3   146. Defendants have entered into an unlawful agreement in restraint of trade in violation of

4 the North Carolina General Statutes §§ 75-1, *et seq.*

5    (a) Defendants' combinations or conspiracies had the following effects: (1) Vehicle Carrier

6     Services price competition was restrained, suppressed, and eliminated throughout North

7     Carolina; (2) Vehicle Carrier Services prices were raised, fixed, maintained and stabilized

8     at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the

9     Damages Class were deprived of free and open competition; and (4) Plaintiffs and

10    members of the Damages Class paid supra-competitive, artificially inflated prices for

11    Vehicle Carrier Services.

12    (b) During the Class Period, Defendants' illegal conduct substantially affected North

13     Carolina commerce.

14    (c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

15     members of the Damages Class have been injured in their business and property and are

16     threatened with further injury.

17    (d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade

18     in violation of North Carolina Gen. Stat. §§ 75-1, *et seq.* Accordingly, Plaintiffs and

19     members of the Damages Class seek all relief available under North Carolina Gen. Stat.

20     §§ 75-1, *et seq.*

21   147. Defendants have entered into an unlawful agreement in restraint of trade in violation of

22 the North Dakota Century Code §§ 51-08.1-01, *et seq.*

23    (a) Defendants' combinations or conspiracies had the following effects: (1) Vehicle Carrier

24     Services price competition was restrained, suppressed, and eliminated throughout North

25     Dakota; (2) Vehicle Carrier Services prices were raised, fixed, maintained and stabilized

26     at artificially high levels throughout North Dakota; (3) Plaintiffs and members of the

27               42

28          CLASS ACTION COMPLAINT

1      Damages Class were deprived of free and open competition; and (4) Plaintiffs and
2      members of the Damages Class paid supra-competitive, artificially inflated prices for
3      Vehicle Carrier Services.

4      (b) During the Class Period, Defendants' illegal conduct had a substantial effect on North
5      Dakota commerce.

6      (c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and
7      members of the Damages Class have been injured in their business and property and are
8      threatened with further injury.

9      (d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade
10      in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq*. Accordingly, Plaintiffs
11      and members of the Damages Class seek all relief available under North Dakota Cent.
12      Code §§ 51-08.1-01, *et seq*.

13      148.    Defendants have entered into an unlawful agreement in restraint of trade in violation of
14   the Oregon Revised Statutes §§ 646.705, *et seq*.

15      (a) Defendants' combinations or conspiracies had the following effects: (1) Vehicle Carrier
16      Services price competition was restrained, suppressed, and eliminated throughout
17      Oregon; (2) Vehicle Carrier Services prices were raised, fixed, maintained and stabilized
18      at artificially high levels throughout Oregon; (3) Plaintiffs and members of the Damages
19      Class were deprived of free and open competition; and (4) Plaintiffs and members of the
20      Damages Class paid supra-competitive, artificially inflated prices for Vehicle Carrier
21      Services.

22      (b) During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon
23      commerce.

24      (c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and
25      members of the Damages Class have been injured in their business and property and are
26      threatened with further injury.

27      43
28      CLASS ACTION COMPLAINT

1    (d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade
2        in violation of Oregon Revised Statutes §§ 646.705, *et seq*. Accordingly, Plaintiffs and
3        members of the Damages Class seek all relief available under Oregon Revised Statutes
4        §§ 646.705, *et seq*.

5    149.    Defendants have entered into an unlawful agreement in restraint of trade in violation of
6    the South Dakota Codified Laws §§ 37-1-3.1, *et seq*.

7        (a) Defendants' combinations or conspiracies had the following effects: (1) Vehicle Carrier
8            Services price competition was restrained, suppressed, and eliminated throughout South
9            Dakota; (2) Vehicle Carrier Services prices were raised, fixed, maintained and stabilized
10           at artificially high levels throughout South Dakota; (3) Plaintiffs and members of the
11           Damages Class were deprived of free and open competition; and (4) Plaintiffs and
12           members of the Damages Class paid supra-competitive, artificially inflated prices for
13           Vehicle Carrier Services.

14       (b) During the Class Period, Defendants' illegal conduct had a substantial effect on South
15           Dakota commerce.

16       (c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and
17           members of the Damages Class have been injured in their business and property and are
18           threatened with further injury.

19       (d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade
20           in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq*. Accordingly, Plaintiffs
21           and members of the Damages Class seek all relief available under South Dakota Codified
22           Laws Ann. §§ 37-1, *et seq*.

23   150.    Defendants have entered into an unlawful agreement in restraint of trade in violation of
24   the Tennessee Code Annotated §§ 47-25-101, *et seq*.

25       (a) Defendants' combinations or conspiracies had the following effects: (1) Vehicle Carrier
26           Services price competition was restrained, suppressed, and eliminated throughout

27                                                44

28                                     CLASS ACTION COMPLAINT

| | |
|---|---|
| 1 | Tennessee; (2) Vehicle Carrier Services prices were raised, fixed, maintained and |
| 2 | stabilized at artificially high levels throughout Tennessee; (3) Plaintiffs and members of |
| 3 | the Damages Class were deprived of free and open competition; and (4) Plaintiffs and |
| 4 | members of the Damages Class paid supra-competitive, artificially inflated prices for |
| 5 | Vehicle Carrier Services. |

6  (b) During the Class Period, Defendants' illegal conduct had a substantial effect on

7  Tennessee commerce.

8  (c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

9  members of the Damages Class have been injured in their business and property and are

10  threatened with further injury.

11  (d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade

12  in violation of Tennessee Code Ann. §§ 47-25-101, *et seq*. Accordingly, Plaintiffs and

13  members of the Damages Class seek all relief available under Tennessee Code Ann. §§

14  47-25-101, *et seq*.

15  151. Defendants have entered into an unlawful agreement in restraint of trade in violation of

16  the Utah Code Annotated §§ 76-10-911, *et seq*.

17  (a) Defendants' combinations or conspiracies had the following effects: (1) Vehicle Carrier

18  Services price competition was restrained, suppressed, and eliminated throughout Utah;

19  (2) Vehicle Carrier Services prices were raised, fixed, maintained and stabilized at

20  artificially high levels throughout Utah; (3) Plaintiffs and members of the Damages Class

21  were deprived of free and open competition; and (4) Plaintiffs and members of the

22  Damages Class paid supra-competitive, artificially inflated prices for Vehicle Carrier

23  Services.

24  (b) During the Class Period, Defendants' illegal conduct had a substantial effect on Utah

25  commerce.

26

27  45

28  CLASS ACTION COMPLAINT

1    (c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

2        members of the Damages Class have been injured in their business and property and are

3        threatened with further injury.

4    (d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade

5        in violation of Utah Code Annotated §§ 76-10-911, *et seq*. Accordingly, Plaintiffs and

6        members of the Damages Class seek all relief available under Utah Code Annotated §§

7        76-10-911, *et seq*.

8    152.    Defendants have entered into an unlawful agreement in restraint of trade in violation of

9    the Vermont Stat. Ann. 9 §§ 2453, *et seq*.

10    (a) Defendants' combinations or conspiracies had the following effects: (1) Vehicle Carrier

11        Services price competition was restrained, suppressed, and eliminated throughout

12        Vermont; (2) Vehicle Carrier Services prices were raised, fixed, maintained and

13        stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of

14        the Damages Class were deprived of free and open competition; and (4) Plaintiffs and

15        members of the Damages Class paid supra-competitive, artificially inflated prices for

16        Vehicle Carrier Services.

17    (b) During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont

18        commerce.

19    (c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

20        members of the Damages Class have been injured in their business and property and are

21        threatened with further injury.

22    (d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade

23        in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq*. Accordingly, Plaintiffs and

24        members of the Damages Class seek all relief available under Vermont Stat. Ann. 9 §§

25        2453, *et seq*.

26

27                                            46

28                            CLASS ACTION COMPLAINT

153.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the West Virginia Code §§ 47-18-1, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1) Vehicle Carrier Services price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) Vehicle Carrier Services prices were raised, fixed, maintained and stabilized at artificially high levels throughout West Virginia; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Vehicle Carrier Services.

(b) During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under West Virginia Code §§ 47-18-1, *et seq*.

154.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1) Vehicle Carrier Services price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) Vehicle Carrier Services prices were raised, fixed, maintained and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and

47

members of the Damages Class paid supra-competitive, artificially inflated prices for
Vehicle Carrier Services.

(b) During the Class Period, Defendants' illegal conduct had a substantial effect on
Wisconsin commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and
members of the Damages Class have been injured in their business and property and are
threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade
in violation of Wisconsin Stat. §§ 133.01, *et seq*. Accordingly, Plaintiffs and members of
the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq*.

155. Plaintiffs and members of the Damages Class in each of the above states have been
injured in their business and property by reason of Defendants' unlawful combination, contract,
conspiracy and agreement. Plaintiffs and members of the Damages Class have paid more for Vehicle
Carrier Services than they otherwise would have paid in the absence of Defendants' unlawful conduct.
This injury is of the type the antitrust laws of the above states were designed to prevent and flows from
that which makes Defendants' conduct unlawful.

156. In addition, Defendants have profited significantly from the aforesaid conspiracy.
Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of
members of the Plaintiffs and members of the Damages Class. Accordingly, Plaintiffs and members of
the Damages Class in each of the above jurisdictions seek damages (including statutory damages where
applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law,
and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

**THIRD CLAIM FOR RELIEF**
**Violation of State Consumer Protection Statutes**
**(on behalf of Plaintiffs and the Damages Class)**

157. Plaintiffs repeat and re-allege the allegations set forth above as if fully set forth herein.

48

1      158.    Defendants engaged in unfair competition or unfair, unconscionable, deceptive or

2 fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes

3 listed below.

4      159.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or

5 fraudulent acts or practices in violation of California Business and Professions Code § 17200, *et seq*.

6          (a) During the Class Period, Defendants marketed, sold, or distributed Vehicle Carrier

7              Services in California, and committed and continue to commit acts of unfair competition,

8              as defined by Sections 17200, *et seq*. of the California Business and Professions Code, by

9              engaging in the acts and practices specified above.

10         (b) This claim is instituted pursuant to Sections 17203 and 17204 of the California Business

11             and Professions Code, to obtain restitution from these Defendants for acts, as alleged

12             herein, that violated Section 17200 of the California Business and Professions Code,

13             commonly known as the Unfair Competition Law.

14         (c) Defendants' conduct as alleged herein violated Section 17200. The acts, omissions,

15             misrepresentations, practices and non-disclosures of Defendants, as alleged herein,

16             constituted a common, continuous, and continuing course of conduct of unfair

17             competition by means of unfair, unlawful, and/or fraudulent business acts or practices

18             within the meaning of California Business and Professions Code, Section 17200, *et seq*.,

19             including, but not limited to, the following: (1) the violations of Section 1 of the Sherman

20             Act, as set forth above; (2) the violations of Section 16720, *et seq*., of the California

21             Business and Professions Code, set forth above;

22         (d) Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as

23             described above, whether or not in violation of Section 16720, *et seq*., of the California

24             Business and Professions Code, and whether or not concerted or independent acts, are

25             otherwise unfair, unconscionable, unlawful or fraudulent;

26

27

49

28                                CLASS ACTION COMPLAINT

1    (e) Defendants' acts or practices are unfair to purchasers of Vehicle Carrier Services (or

2        Vehicles transported by them) in the State of California within the meaning of Section

3        17200, California Business and Professions Code; and

4    (f) Defendants' acts and practices are fraudulent or deceptive within the meaning of Section

5        17200 of the California Business and Professions Code.

6    (g) Plaintiffs and members of the Damages Class are entitled to full restitution and/or

7        disgorgement of all revenues, earnings, profits, compensation, and benefits that may have

8        been obtained by Defendants as a result of such business acts or practices.

9    (h) The illegal conduct alleged herein is continuing and there is no indication that Defendants

10       will not continue such activity into the future.

11   (i) The unlawful and unfair business practices of Defendants, and each of them, as described

12       above, have caused and continue to cause Plaintiffs and members of the Damages Class

13       to pay supra-competitive and artificially-inflated prices for Vehicle Carrier Services (or

14       Vehicles transported by them). Plaintiffs and members of the Damages Class suffered

15       injury in fact and lost money or property as a result of such unfair competition.

16   (j) The conduct of Defendants as alleged in this Complaint violates Section 17200 of the

17       California Business and Professions Code.

18   (k) As alleged in this Complaint, Defendants and their co-conspirators have been unjustly

19       enriched as a result of their wrongful conduct and by Defendants' unfair competition.

20       Plaintiffs and members of the Damages Class are accordingly entitled to equitable relief

21       including restitution and/or disgorgement of all revenues, earnings, profits,

22       compensation, and benefits that may have been obtained by Defendants as a result of

23       such business practices, pursuant to the California Business and Professions Code,

24       Sections 17203 and 17204.

25   160.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive

26   acts or practices in violation of District of Columbia Code § 28-3901, *et seq*.

27                                              50

28                                  CLASS ACTION COMPLAINT

1

(a) Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which Vehicle Carrier Services were sold, distributed or obtained in the District of Columbia.

2

3

4

5

(b) The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C.

6

Code § 28-3904. Plaintiffs were not aware of Defendants' price-fixing conspiracy and

7

were therefore unaware that they were being unfairly and illegally overcharged. There

8

was a gross disparity of bargaining power between the parties with respect to the price

9

charged by Defendants for Vehicle Carrier Services. Defendants had the sole power to set

10

that price and Plaintiffs had no power to negotiate a lower price. Moreover, Plaintiffs

11

lacked any meaningful choice in purchasing Vehicle Carrier Services because he was

12

unaware of the unlawful overcharge and there was no alternative source of supply

13

through which Plaintiffs could avoid the overcharges. Defendants' conduct with regard to

14

sales of Vehicle Carrier Services, including their illegal conspiracy to secretly fix the

15

price of Vehicle Carrier Services at supra-competitive levels and overcharge consumers,

16

was substantively unconscionable because it was one-sided and unfairly benefited

17

Defendants at the expense of Plaintiffs and the public. Defendants took grossly unfair

18

advantage of Plaintiff. The suppression of competition that has resulted from Defendants'

19

conspiracy has ultimately resulted in unconscionably higher prices for purchasers so that

20

there was a gross disparity between the price paid and the value received for Vehicle

21

Carrier Services.

22

(c) Defendants' unlawful conduct had the following effects: (1) Vehicle Carrier Services

23

price competition was restrained, suppressed, and eliminated throughout the District of

24

Columbia; (2) Vehicle Carrier Services prices were raised, fixed, maintained, and

25

stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and

26

the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the

27

51

28

1    Damages Class paid supra-competitive, artificially inflated prices for Vehicle Carrier

2    Services.

3    (d) As a direct and proximate result of Defendants' conduct, Plaintiffs and members of the

4    Damages Class have been injured and are threatened with further injury. Defendants have

5    engaged in unfair competition or unfair or deceptive acts or practices in violation of

6    District of Columbia Code § 28-3901, *et seq*., and, accordingly, Plaintiffs and members

7    of the Damages Class seek all relief available under that statute.

8    161.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive

9    acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§

10   501.201, *et seq*.

11   (a) Defendants' unlawful conduct had the following effects: (1) Vehicle Carrier Services

12   price competition was restrained, suppressed, and eliminated throughout Florida; (2)

13   Vehicle Carrier Services prices were raised, fixed, maintained, and stabilized at

14   artificially high levels throughout Florida; (3) Plaintiffs and members of the Damages

15   Class were deprived of free and open competition; and (4) Plaintiffs and members of the

16   Damages Class paid supra-competitive, artificially inflated prices for Vehicle Carrier

17   Services.

18   (b) During the Class Period, Defendants' illegal conduct substantially affected Florida

19   commerce and consumers.

20   (c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

21   members of the Damages Class have been injured and are threatened with further injury.

22   (d) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in

23   violation of Florida Stat. § 501.201, *et seq*., and, accordingly, Plaintiffs and members of

24   the Damages Class seek all relief available under that statute.

25   162.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive

26   acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq*.

27   52

28   CLASS ACTION COMPLAINT

(a) Defendants' unlawful conduct had the following effects: (1) Vehicle Carrier Services price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Vehicle Carrier Services prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Vehicle Carrier Services.

(b) During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

(d) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Rev. Stat. § 480, *et seq*., and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

163. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq*.

(a) Missouri Plaintiffs and members of this Damages Class purchased Vehicle Carrier Services for personal, family, or household purposes.

(b) Defendants engaged in the conduct described herein in connection with the sale of Vehicle Carrier Services in trade or commerce in a market that includes Missouri.

(c) Defendants agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which Vehicle Carrier Services were sold, distributed, or obtained in Missouri, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical,

53

1      oppressive and unscrupulous, and caused substantial injury to Plaintiffs and members of

2      the Damages Class.

3      (d) Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs and

4      members of the Damages Class concerning Defendants' unlawful activities and

5      artificially inflated prices for Vehicle Carrier Services. The concealed, suppressed, and

6      omitted facts would have been important to Plaintiffs and members of the Damages Class

7      as they related to the cost of Vehicle Carrier Services they purchased.

8      (e) Defendants misrepresented the real cause of price increases and/or the absence of price

9      reductions in Vehicle Carrier Services by making public statements that were not in

10      accord with the facts.

11      (f) Defendants' statements and conduct concerning the price of Vehicle Carrier Services

12      were deceptive as they had the tendency or capacity to mislead Plaintiffs and members of

13      the Damages Class to believe that they were purchasing Vehicle Carrier Services at

14      prices established by a free and fair market.

15      (g) Defendants' unlawful conduct had the following effects: (1) Vehicle Carrier Services

16      price competition was restrained, suppressed, and eliminated throughout Missouri; (2)

17      Vehicle Carrier Services prices were raised, fixed, maintained, and stabilized at

18      artificially high levels throughout Missouri; (3) Plaintiffs and members of the Damages

19      Class were deprived of free and open competition; and (4) Plaintiffs and members of the

20      Damages Class paid supra-competitive, artificially inflated prices for Vehicle Carrier

21      Services.

22      (h) The foregoing acts and practices constituted unlawful practices in violation of the

23      Missouri Merchandising Practices Act.

24      (i) As a direct and proximate result of the above-described unlawful practices, Plaintiffs and

25      members of the Damages Class suffered ascertainable loss of money or property.

26

27

<div align="center">54</div>

28

<div align="center">CLASS ACTION COMPLAINT</div>

1         (j) Accordingly, Plaintiffs and members of the Damages Class seek all relief available under

2               Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which

3               prohibits "the act, use or employment by any person of any deception, fraud, false

4               pretense, false promise, misrepresentation, unfair practice or the concealment,

5               suppression, or omission of any material fact in connection with the sale or advertisement

6               of any merchandise in trade or commerce…," as further interpreted by the Missouri Code

7               of State Regulations, 15 CSR 60-7.010, *et seq.*, 15 CSR 60-8.010, *et seq.*, and 15 CSR

8               60-9.010, *et seq.*, and Mo. Rev. Stat. § 407.025, which provides for the relief sought in

9               this count.

10     164.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive

11 acts or practices in violation of the Montana Unfair Trade Practices and Consumer Protection Act of

12 1970, Mont. Code, §§ 30-14-103, *et seq.*, and §§ 30-14-201, *et seq.*

13         (a) Defendants' unlawful conduct had the following effects: (1) Vehicle Carrier Services

14               price competition was restrained, suppressed, and eliminated throughout Montana; (2)

15               Vehicle Carrier Services prices were raised, fixed, maintained, and stabilized at

16               artificially high levels throughout Montana; (3) Plaintiffs and members of the Damages

17               Class were deprived of free and open competition; and (4) Plaintiffs and members of the

18               Damages Class paid supra-competitive, artificially inflated prices for Vehicle Carrier

19               Services.

20         (b) During the Class Period, Defendants marketed, sold, or distributed Vehicle Carrier

21               Services in Montana, and Defendants' illegal conduct substantially affected Montana

22               commerce and consumers.

23         (c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

24               members of the Damages Class have been injured and are threatened with further injury.

25         (d) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in

26               violation of Mont. Code, §§ 30-14-103, *et seq.*, and §§ 30-14-201, *et seq.*, and,

27

55

28                               CLASS ACTION COMPLAINT

1          accordingly, Plaintiffs and members of the Damages Class seek all relief available under

2          that statute.

3     165.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive

4 acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq*.

5          (a) Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting,

6              fixing, controlling and/or maintaining at non-competitive and artificially inflated levels,

7              the prices at which Vehicle Carrier Services were sold, distributed or obtained in New

8              Mexico and took efforts to conceal their agreements from Plaintiffs and members of the

9              Damages Class.

10         (b) The aforementioned conduct on the part of Defendants constituted "unconscionable trade

11              practices," in violation of N.M.S.A. Stat. § 57-12-3, in that such conduct, inter alia,

12              resulted in a gross disparity between the value received by Plaintiffs and members of the

13              Damages Class and the prices paid by them for Vehicle Carrier Services as set forth in

14              N.M.S.A., § 57-12-2E. Plaintiffs were not aware of Defendants' price-fixing conspiracy

15              and were therefore unaware that they were being unfairly and illegally overcharged.

16              There was a gross disparity of bargaining power between the parties with respect to the

17              price charged by Defendants for Vehicle Carrier Services. Defendants had the sole power

18              to set that price and Plaintiffs had no power to negotiate a lower price. Moreover,

19              Plaintiffs lacked any meaningful choice in purchasing Vehicle Carrier Services because

20              he was unaware of the unlawful overcharge and there was no alternative source of supply

21              through which Plaintiffs could avoid the overcharges. Defendants' conduct with regard to

22              sales of Vehicle Carrier Services, including their illegal conspiracy to secretly fix the

23              price of Vehicle Carrier Services at supra-competitive levels and overcharge consumers,

24              was substantively unconscionable because it was one-sided and unfairly benefited

25              Defendants at the expense of Plaintiffs and the public. Defendants took grossly unfair

26              advantage of Plaintiff. The suppression of competition that has resulted from Defendants'

27

56

28

1         conspiracy has ultimately resulted in unconscionably higher prices for consumers so that

2         there was a gross disparity between the price paid and the value received for Vehicle

3         Carrier Services.

4       (c) Defendants' unlawful conduct had the following effects: (1) Vehicle Carrier Services

5         price competition was restrained, suppressed, and eliminated throughout New Mexico;

6         (2) Vehicle Carrier Services prices were raised, fixed, maintained, and stabilized at

7         artificially high levels throughout New Mexico; (3) Plaintiffs and members of the

8         Damages Class were deprived of free and open competition; and (4) Plaintiffs and

9         members of the Damages Class paid supra-competitive, artificially inflated prices for

10        Vehicle Carrier Services.

11       (d) During the Class Period, Defendants' illegal conduct substantially affected New Mexico

12         commerce and consumers.

13       (e) As a direct and proximate result of the unlawful conduct of Defendants, Plaintiffs and

14         members of the Damages Class have been injured and are threatened with further injury.

15       (f) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in

16         violation of New Mexico Stat. § 57-12-1, *et seq*., and, accordingly, Plaintiffs and

17         members of the Damages Class seek all relief available under that statute.

18    166.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive

19 acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq*.

20       (a) Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting,

21         fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices

22         at which Vehicle Carrier Services were sold, distributed or obtained in New York and

23         took efforts to conceal their agreements from Plaintiffs and members of the Damages

24         Class.

25       (b) Defendants and their co-conspirators made public statements about the prices of Vehicle

26         Carrier Services that either omitted material information that rendered the statements that

27

<div align="center">57</div>

28

they made materially misleading or affirmatively misrepresented the real cause of price increases for Vehicle Carrier Services; and Defendants alone possessed material information that was relevant to consumers, but failed to provide the information.

(c) Because of Defendants' unlawful trade practices in the State of New York, New York consumer class members who indirectly purchased Vehicle Carrier Services were misled to believe that they were paying a fair price for Vehicle Carrier Services or the price increases for Vehicle Carrier Services were for valid business reasons; and similarly situated consumers were potentially affected by Defendants' conspiracy.

(d) Defendants knew that their unlawful trade practices with respect to pricing Vehicle Carrier Services would have an impact on New York consumers and not just Defendants' direct customers.

(e) Defendants knew that their unlawful trade practices with respect to pricing Vehicle Carrier Services would have a broad impact, causing consumer class members who indirectly purchased Vehicle Carrier Services to be injured by paying more for Vehicle Carrier Services than they would have paid in the absence of Defendants' unlawful trade acts and practices.

(f) The conduct of Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

(g) Defendants' unlawful conduct had the following effects: (1) Vehicle Carrier Services price competition was restrained, suppressed, and eliminated throughout New York; (2) Vehicle Carrier Services prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the

58

1
2

Damages Class paid supra-competitive, artificially inflated prices for Vehicle Carrier Services.

3
4
5

(h) During the Class Period, Defendants marketed, sold, or distributed Vehicle Carrier Services in New York, and Defendants' illegal conduct substantially affected New York commerce and consumers.

6
7
8

(i) During the Class Period, each of Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Vehicle Carrier Services in New York.

9
10

(j) Plaintiffs and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349 (h).

11       167.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive
12   acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*

13
14
15
16
17

(a) Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Vehicle Carrier Services were sold, distributed or obtained in North Carolina and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

18
19
20
21
22
23
24
25
26

(b) Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts. Secrecy was integral to the formation, implementation and maintenance of Defendants' price-fixing conspiracy. Defendants committed inherently deceptive and self-concealing actions, of which Plaintiffs could not possibly have been aware. Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their price increases. Defendants' public statements concerning the price of Vehicle Carrier Services created the illusion of competitive pricing controlled by market forces rather than supracompetitive pricing driven by Defendants' illegal conspiracy. Moreover, Defendants deceptively concealed

27

59

28

1      their unlawful activities by mutually agreeing not to divulge the existence of the

2      conspiracy to outsiders.

3      (c) The conduct of Defendants described herein constitutes consumer-oriented deceptive acts

4          or practices within the meaning of North Carolina law, which resulted in consumer injury

5          and broad adverse impact on the public at large, and harmed the public interest of North

6          Carolina consumers in an honest marketplace in which economic activity is conducted in

7          a competitive manner.

8      (d) Defendants' unlawful conduct had the following effects: (1) Vehicle Carrier Services

9          price competition was restrained, suppressed, and eliminated throughout North Carolina;

10         (2) Vehicle Carrier Services prices were raised, fixed, maintained, and stabilized at

11         artificially high levels throughout North Carolina; (3) Plaintiffs and members of the

12         Damages Class were deprived of free and open competition; and (4) Plaintiffs and

13         members of the Damages Class paid supra-competitive, artificially inflated prices for

14         Vehicle Carrier Services.

15     (e) During the Class Period, Defendants marketed, sold, or distributed Vehicle Carrier

16         Services in North Carolina, and Defendants' illegal conduct substantially affected North

17         Carolina commerce and consumers.

18     (f) During the Class Period, each of Defendants named herein, directly, or indirectly and

19         through affiliates they dominated and controlled, manufactured, sold and/or distributed

20         Vehicle Carrier Services in North Carolina.

21     (g) Plaintiffs and members of the Damages Class seek actual damages for their injuries

22         caused by these violations in an amount to be determined at trial and are threatened with

23         further injury. Defendants have engaged in unfair competition or unfair or deceptive acts

24         or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*, and, accordingly,

25         Plaintiffs and members of the Damages Class seek all relief available under that statute.

26

27                                          60

28                            CLASS ACTION COMPLAINT

1    168.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive

2  acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act,

3  R.I. Gen. Laws §§ 6-13.1-1, *et seq*.

4    (a) Members of this Damages Class purchased Vehicle Carrier Services for personal, family,

5        or household purposes.

6    (b) Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market

7        that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at

8        artificial and non-competitive levels, the prices at which Vehicle Carrier Services were

9        sold, distributed, or obtained in Rhode Island.

10   (c) Defendants deliberately failed to disclose material facts to Plaintiffs and members of the

11       Damages Class concerning Defendants' unlawful activities and artificially inflated prices

12       for Vehicle Carrier Services. Defendants owed a duty to disclose such facts, and

13       considering the relative lack of sophistication of the average, non-business purchaser,

14       Defendants breached that duty by their silence. Defendants misrepresented to all

15       purchasers during the Class Period that Defendants' Vehicle Carrier Services prices were

16       competitive and fair.

17   (d) Defendants' unlawful conduct had the following effects: (1) Vehicle Carrier Services

18       price competition was restrained, suppressed, and eliminated throughout Rhode Island;

19       (2) Vehicle Carrier Services prices were raised, fixed, maintained, and stabilized at

20       artificially high levels throughout Rhode Island; (3) Plaintiffs and members of the

21       Damages Class were deprived of free and open competition; and (4) Plaintiffs and

22       members of the Damages Class paid supra-competitive, artificially inflated prices for

23       Vehicle Carrier Services.

24   (e) As a direct and proximate result of Defendants' violations of law, Plaintiffs and members

25       of the Damages Class suffered an ascertainable loss of money or property as a result of

26       Defendants' use or employment of unconscionable and deceptive commercial practices as

27                                              61

28                               CLASS ACTION COMPLAINT

1          set forth above. That loss was caused by Defendants' willful and deceptive conduct, as

2          described herein.

3          (f) Defendants' deception, including their affirmative misrepresentations and omissions

4              concerning the price of Vehicle Carrier Services, likely misled all purchasers acting

5              reasonably under the circumstances to believe that they were purchasing Vehicle Carrier

6              Services at prices set by a free and fair market. Defendants' affirmative

7              misrepresentations and omissions constitute information important to Plaintiffs and

8              members of the Damages Class as they related to the cost of Vehicle Carrier Services

9              they purchased.

10         (g) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in

11             violation of Rhode Island Gen. Laws. § 6-13.1-1, *et seq*., and, accordingly, Plaintiffs and

12             members of the Damages Class seek all relief available under that statute.

13   169.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive

14   acts or practices in violation of 9 Vermont § 2451, *et seq*.

15         (a) Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market

16             that includes Vermont, by affecting, fixing, controlling, and/or maintaining, at artificial

17             and non-competitive levels, the prices at which Vehicle Carrier Services were sold,

18             distributed, or obtained in Vermont.

19         (b) Defendants deliberately failed to disclose material facts to Plaintiffs and members of the

20             Damages Class concerning Defendants' unlawful activities and artificially inflated prices

21             for Vehicle Carrier Services. Defendants owed a duty to disclose such facts, and

22             considering the relative lack of sophistication of the average, non-business purchaser,

23             Defendants breached that duty by their silence. Defendants misrepresented to all

24             purchasers during the Class Period that Defendants' Vehicle Carrier Services prices were

25             competitive and fair.

26

27                                                   62

28                                     CLASS ACTION COMPLAINT

1    (c) Defendants' unlawful conduct had the following effects: (1) Vehicle Carrier Services

2         price competition was restrained, suppressed, and eliminated throughout Vermont; (2)

3         Vehicle Carrier Services prices were raised, fixed, maintained, and stabilized at

4         artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages

5         Class were deprived of free and open competition; and (4) Plaintiffs and members of the

6         Damages Class paid supra-competitive, artificially inflated prices for Vehicle Carrier

7         Services.

8    (d) As a direct and proximate result of Defendants' violations of law, Plaintiffs and members

9         of the Damages Class suffered an ascertainable loss of money or property as a result of

10        Defendants' use or employment of unconscionable and deceptive commercial practices as

11        set forth above. That loss was caused by Defendants' willful and deceptive conduct, as

12        described herein.

13   (e) Defendants' deception, including their affirmative misrepresentations and omissions

14        concerning the price of Vehicle Carrier Services, likely misled all purchasers acting

15        reasonably under the circumstances to believe that they were purchasing Vehicle Carrier

16        Services at prices set by a free and fair market. Defendants' misleading conduct and

17        unconscionable activities constitutes unfair competition or unfair or deceptive acts or

18        practices in violation of 9 Vermont § 2451, *et seq*., and, accordingly, Plaintiffs and

19        members of the Damages Class seek all relief available under that statute.

20                          **FOURTH CLAIM FOR RELIEF**
                                **Unjust Enrichment**
21                  **(on behalf of Plaintiffs and the Damages Class)**

22   170.   Plaintiffs repeat and reallege the allegations set forth above as if fully set forth herein.

23   171.   As a result of their unlawful conduct described above, Defendants have and will continue

24   to be unjustly enriched. Defendants have been unjustly enriched by the receipt of, at a minimum,

25   unlawfully inflated prices and unlawful profits on Vehicle Carrier Services.

26   172.   Defendants have benefited from their unlawful acts and it would be inequitable for

27                                        63

28                          CLASS ACTION COMPLAINT

1 Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by
2 Plaintiffs and members of the Damages Class for Vehicle Carrier Services.

3    173.    Plaintiffs and members of the Damages Class are entitled to the amount of Defendants'
4 ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiffs and members of
5 the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten
6 gains from which Plaintiffs and members of the Damages Class may make claims on a pro rata basis.

## PRAYER FOR RELIEF

8 WHEREFORE, Plaintiffs demand judgment as follows:

(a) The Court determine that this action may be maintained as a class action under Rule
   23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable
   notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil
   Procedure, be given to each and every member of the Classes;

(b) That the unlawful conduct, contract, conspiracy, or combination alleged herein be
   adjudged and decreed: (i) An unreasonable restraint of trade or commerce in violation of
   Section 1 of the Sherman Act; (ii) A per se violation of Section 1 of the Sherman Act; (ii)
   An unlawful combination, trust, agreement, understanding and/or concert of action in
   violation of the state antitrust and unfair competition and consumer protection laws as set
   forth herein; and (iv) Acts of unjust enrichment by Defendants as set forth herein.

(c) Plaintiffs and members of the Damages Class recover damages, to the maximum extent
   allowed under such laws, and that a joint and several judgment in favor of Plaintiffs and
   members of the Damages Class be entered against Defendants in an amount to be trebled
   to the extent such laws permit;

(d) Plaintiffs and members of the Damages Class recover damages, to the maximum extent
   allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully
   gained from them;

64

1      (e) Defendants, their affiliates, successors, transferees, assignees and other officers,

2            directors, partners, agents and employees thereof, and all other persons acting or claiming

3            to act on their behalf or in concert with them, be permanently enjoined and restrained

4            from in any manner continuing, maintaining or renewing the conduct, contract,

5            conspiracy, or combination alleged herein, or from entering into any other contract,

6            conspiracy, or combination having a similar purpose or effect, and from adopting or

7            following any practice, plan, program, or device having a similar purpose or effect;

8      (f) Plaintiffs and members of the Damages Class be awarded restitution, including

9            disgorgement of profits Defendants obtained as a result of their acts of unfair competition

10          and acts of unjust enrichment;

11     (g) Plaintiffs and members of the Classes be awarded pre-and post-judgment interest as

12          provided by law, and that such interest be awarded at the highest legal rate from and after

13          the date of service of this Complaint;

14     (h) Plaintiffs and members of the Classes recover their costs of suit, including reasonable

15          attorneys' fees, as provided by law; and

16     (i) Plaintiffs and members of the Classes have such other and further relief as the case may

17          require and the Court may deem just and proper.

18                       **JURY TRIAL DEMANDED**

19    Plaintiffs hereby demand a trial by jury on those claims that can be tried to a jury.

20   DATED: July 30, 2013            Respectfully submitted,

21                              **GIRARD GIBBS LLP**

22

23                           By: _____

24                              Scott M. Grzenczyk (SBN: 279309)

25

26

27                             65

28                    CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Daniel C. Girard (SBN: 114826)
Dena C. Sharp (SBN: 245869)
Adam E. Polk (SBN: 273000)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
Email: dcg@girardgibbs.com

*Counsel for Plaintiffs Tiffany Bui
and Nicholas Letourneau*

66